## 1372

**Application of Private Michael G. McGEHEE**

v.

**Colonel William A. McKANEY, Jr., Commanding Officer of the Post of Fort Holabird,**

and

**Stanley Resor, Secretary of the Army,**

and

**Melvin Laird, Secretary of Defense,**

and

**Lt. Colonel Theodore C. Gettings, Commanding Officer of Fort Holabird, Maryland.**

**Civ. No. 70-287-K.**

United States District Court,
D. Maryland.

May 13, 1970.

William H. Zinman, Baltimore, Md., for plaintiff.

Stephen H. Sachs, U. S. Atty., J. Frederick Motz, Asst. U. S. Atty., District of Maryland, for respondents.

FRANK A. KAUFMAN, District Judge.

This habeas corpus proceeding was instituted by Michael G. McGehee, a private in the United States Army, presently stationed at Fort Holabird, Maryland. McGehee was inducted into the Army in February, 1969. On November 25, 1969, he filed an application for a discharge from the Army as a conscientious objector. That application was subsequently denied by the Adjutant General of the Army and such denial was communicated to McGehee in February, 1970. Thereafter, McGehee instituted these proceedings [1] which raise the issue of whether the Army's denial of petitioner's application is appropriately grounded in fact, i. e., whether there is any basis in fact to support the finding that McGehee is not a bona fide conscientious objector whose religious convictions became fixed after his entry into the Army in February, 1969.

McGehee, whose parents are both Catholics, was raised as a Catholic and educated in Catholic educational institutions. In his November, 1969 application, he asserted that his beliefs had been influenced by modern Catholic writings, especially the Vatican II documents. McGehee's application included letters from teachers and others attesting to his integrity and relating to the length and depth of his religious training, and his convictions and their development after he entered the Army into conscientious objection to participation in war in any form.[2]

---

1. After commencing the within case, petitioner asked this Court to prohibit respondents from removing him from the jurisdiction of this Court pending this Court's determination herein. Respond-

ents' counsel consented to the issuance of an Order by this Court to that effect.

2. One of the letters was from McGehee's father, a bomber pilot in Europe during

McGehee was interviewed by Captain Warme, an Army chaplain, who suggested that petitioner's claim "be given serious consideration" but failed to comment with regard to the character or sincerity or sequential development of McGehee's views.

On November 25, 1969, Captain Linn, McGehee's commanding officer, recommended approval of the latter's application for discharge, concluding:

PVT McGehee seems sincerely motivated in his conviction not to participate in war in any form.

Captain Clark, an officer said to be knowledgeable in policies and procedures relating to conscientious objection matters, interviewed McGehee on December 11, 1969 and filed a detailed report of that interview, concluding with the following statement:

Private McGehee explained his reasons for applying for separation from the service on the grounds he is a Conscientious Objector. He states his belief in simple terms, the main point being he objects to taking another man's life. He places human life above all else, to include a person's country and his beliefs.

I believe Private McGehee is somewhat immature and for the moment believes he is a Conscientious Objector. I do not believe his convictions regarding non-violence are as deep-rooted as he would have us believe. The basis for this application is religion and his personal beliefs. Except for conversations with his parents, teachers and friends, there is nothing in his background to support his claim to be a Conscientious Objector.

Without a doubt, Private McGehee is not as articulate or learned as many applicants for this status, but I cannot bring myself to debate his case with him to discredit his sincerity. He does have the benefit of the regulation and his answers support his stated belief.

Captain Clark further wrote:

I recommend Private McGehee's request for separation from the service be granted.

I further recommend that he be placed in the Selective Service Civilian Work Program for Conscientious Objectors since he has indicated his willingness to serve his country in this manner, and that his discharge be contingent upon his participation in this civilian program.

On December 10, 1969, Lt. Col. La Fon filed the following report:

Recommend Pvt McGehee be discharged from the service as a conscientious objector.

Pvt McGehee's conviction appears to be sincerely motivated. In a recent interview PVT McGehee discussed his faith, beliefs and the impact of religion on his life. Though not articulate, he made it apparent that he could not participate, either directly or indirectly, in any organization advocating violence. It would be in the best interest of the US Army to discharge PVT McGehee from the service as a conscientious objector.

On December 12, 1969, Lt. Col. Gettings, who apparently did not interview McGehee, concluded:

Recommend Private McGehee be released from the service as a Conscientious Objector. All supporting documentation, without exception or qualification, bears out Private McGehee's contention that he is indeed a Conscientious Objector.

Subsequently, the Army's Class 1–O Conscientious Objector Review Board considered McGehee's November 25, 1969 application and filed the following opinion:

1. The Board finds that McGehee's views became fixed prior to his entry into the active military service. Un-

World War II, who stated that his son "firmly believes in what he is doing; and for this reason I am justly proud of my son." In his interview with Captain Clark (see *infra*, p. ——), McGehee stated that he did not think his father "believes in everything that I do, but he respects my beliefs."

der paragraph 3, AR 635-20, the Board may only consider requests for separation based on bona fide conscientious objection to participation in war in any form when such objection develops subsequent to, or becomes fixed after entry into the active military service. Accordingly, McGehee's application may not be favorably considered. This finding is based on the following facts in the record:

a. In his application McGehee states "I have been educated in Catholic instutions [sic] and have adopted a Christian set of values which would prohibit my participation in activities such as war. These beliefs are a result of my Catholic education, the influence of my parents, who are Catholics, and personal reading and reflection on this matter." This statement by McGehee clearly indicates that his beliefs are based on educational and personal experiences which occurred prior to his entry into the active military service.

b. The Board notes that the first three letters of reference included in McGehee's application reflect that his views have matured or changed. However, the letter from Mr. Beverungen is most explicit on the issue of the timing of McGehee's beliefs. He states: "I have been a close friend of my [sic] Michael's for several years, during which time we have had many conversations concerning the morality of war. He has told me on several occasions that he feels war is an activity in which he could not morally participate." This indicates clearly that McGehee did express his opposition to war prior to his entry into the service.

c. On page 2 of the hearing officer's report McGehee's response to the question as to why he enlisted is as follows: "I enlisted because of desperation. This desperation occurred because I broke-up with this girl I was going with for a year and a half and because of the bad grades I had in school which forced me to quit. Both of these things occurred within a few days of each other. The week follow-ing this I enlisted in the Army in March under the delayed enlistment program and came on active duty in June. This was the worst mistake I could have made." This explanation indicates that McGehee's enlistment may have been an impulsive act. However, when considered with his admission in his statement of beliefs that he is basing his conscientious objection on his religious training which all occurred prior to his entry into the service and the statement from Mr. Beverungen's letter, it is clear that McGehee put aside his previous conscientious objection during a brief moment. However, his views have not changed subsequent to his entry into the military service. Also on page 2 and on the beginning of page 3 he answers the question as to when his views became fixed to the point where he could not serve as follows: "I have had these beliefs all my life. I first brought them out into the open right before I started class for Image Interpretation. I felt that I should no longer go down the path that I was headed at this time." Reading the record as a whole, the Board finds that McGehee's views in fact did exist prior to his entry into the active military service and that there has not been a significant change in his beliefs subsequent to his entry into the active military service.

2. *Action of the Board*

Disapproval

The Adjutant General of the Army, in denying the application, commented:

Applicant's professed views became fixed prior to his entry into the active military service.

No one who interviewed McGehee concluded that his views became fixed before he was inducted into the Army. But neither did any such person reach the opposite conclusion. That McGehee's views are religious in nature and sincerely held is not disputed by anyone. But under AR 635-20, the applicable regulation, those views must have crystallized

after entry into the service [3] in order for McGehee to be entitled to be classified 1-O and be discharged.

This Court cannot say that the Review Board could not infer from the record sufficient facts to permit the conclusion it reached. But in the absence of any expression of views by any person who interviewed McGehee, concerning the time at which the latter's views became fixed, the Army should have required further interviews and reports on that specific issue, rather than simply rejecting the application.

It could, of course, be argued that McGehee had the burden of establishing that his views became fixed after entry into the service and that he failed to shoulder that burden in his application (in spite of the letters attached thereto and the comments therein alluded to by the Review Board in its opinion) after being afforded, and declining, the opportunity to have counsel with him at his interview by Captain Clark. But no one, until the Review Board spoke, even raised the issue upon which that Board based its opinion; furthermore, each officer who had anything to do with McGehee's application before it reached the Review Board recommended that it be granted. Under those circumstances, this Court remands McGehee's application for further consideration by the Army in accordance with this opinion.

3. On May 10, 1968, pursuant to the general power of the Secretary of Defense as the chief executive officer of the Department of Defense under 10 U.S.C. § 133, that Department promulgated D.O.D. Directive 1300.6 "Conscientious Objectors." The Directive was amended on December 20, 1968.

In that Directive, it is stated: "The fact of conscientious objection does not exempt men from the draft," but Congress has "deemed it more essential to respect a man's religious beliefs than to force him to serve in the Armed Forces and accordingly has provided that a person having bona fide religious objection to participation in war in any form * * * shall not be inducted into the Armed Forces but will be required to serve his country for the same period of time in civilian work contributing to the maintenance of national health, safety, or interest under a civilian work program administered by Selective Service." Further, the Directive states that "Consistent with this national policy, bona fide conscientious objection [as set forth in the Directive] by persons who are members of the Armed Forces will be recognized to the extent practicable and equitable. Objection to a particular war will not be recognized."

A.R. 635-20, entitled "Personnel Separations—Conscientious Objection," sets forth policy and procedure to be followed. Paragraph 3, headed "Policy" provides as follows:

a. Consideration will be given to requests for separation based on bona fide conscientious objection to participation in war, in any form, when such objection develops subsequent to entry into the active military service.

b. Federal courts have held that a claim to exemption from military service under Selective Service laws must be interposed prior to notice of induction, and failure to make timely claim for exemption constitutes waiver of the right to claim. However, claims based on conscientious objection growing out of experiences prior to entering military service, but which did not become fixed until entry into the service, will be considered. Requests for discharge after entering military service will not be accepted when—

(1) Based solely on conscientious objection which existed, but which was not claimed prior to induction, enlistment, or entry on active duty or active duty for training.

(2) Based solely on conscientious objection claimed and denied by the Selective Service System prior to ilnduction.

(3) Based on essentially political, sociological, or philosophical views, or on a merely personal moral code.

(4) Based on objection to a particular war.

c. All requests for discharge based on conscientious objections will be considered on an individual basis in accordance with the facts and special circumstances in a particular case.

d. Final determination on all requests for discharge based on conscientious objection (to include those listed in b above) will be made at Headquarters, Department of the Army.