**Larry Andrew BOLEN, Petitioner-Appellant,**

v.

**Melvin LAIRD et al., Respondents-Appellees.**

**No. 776, Docket 71–1088.**

United States Court of Appeals, Second Circuit.

Argued March 12, 1971.

Decided May 27, 1971.

John E. LeMoult, New York City (Karpatkin, Ohrenstein & Karpatkin, New York City, Marvin Karpatkin, New York City, on the brief), for petitioner-appellant.

Mary P. Maguire, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty., E. D. N. Y., David G. Trager, Asst. U. S. Atty., on the brief), for respondents-appellees.

Before HAYS and FEINBERG, Circuit Judges, and CURTIN, District Judge.*

CURTIN, District Judge:

Petitioner enlisted in the Navy in January, 1970. Five months later, he submitted an application for discharge as a conscientious objector. Upon completion of the necessary procedures, including a number of interviews with designated officers at his base in Florida, petitioner's application was forwarded to Washington for final consideration by an appointed board in the Bureau of Naval Personnel. The board recommended disapproval of the application on the ground that Seaman Bolen's objection existed prior to enlistment. The Chief of Naval Personnel affirmed the Review Board, disapproved the application, and notified petitioner. Shortly thereafter, petitioner went on an unauthorized leave of absence. One month later, he surrendered himself at the Brooklyn Naval Station, where he is currently assigned. Petitioner's action in the United States District Court for the Eastern District of New York for a writ of habeas corpus was dismissed without a hearing. We find error and reverse and remand with instructions that the Navy be directed to reprocess the application in accordance with this opinion.

In accordance with the national policy expressed in Section 6(j) of the Military Selective Service Act of 1967 (50 App. U.S.C. § 456(j)),[1] the Department of Defense issued Directive 1300.6 which established rules and procedures governing conscientious objectors whose convictions crystallize after entry into military service. Adopting the essential language of this Directive, the Navy promulgated the following regulation:

A request for discharge after entering naval service based solely on conscientious objection which existed but was not claimed prior to induction or enlistment shall not be considered. Requests for discharge based solely on conscientious objection claimed but denied by the Selective Service System (SSS) prior to induction shall not be considered. Claims based on conscientious objection growing out of experiences prior to entering military service but which did not become fixed until entry into the service will be considered. (Bureau of Naval Personnel Manual 1860120 ¶1(b) [Bupersman].)

Pursuant to this regulation, Seaman Bolen submitted an eight-page application containing biographical background and the reasons[2] for his claim to a discharge as a conscientious objector. Annexed to the application were six letters

---

* Of the United States District Court for the Western District of New York, sitting by designation.

1. "Nothing contained in this title * * * shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form."

2. A representative excerpt is as follows:
"First and foremost, I believe that no one person or group of persons has the right to take the life of another human being. I was taught, through my religious training in the Church of God and my home atmosphere, that life, in all forms, is sacred and to be respected. I was taught that through peace and understanding all men could learn to live together in peace. This training

has been a major factor in the formation of my moral principles and because of this I feel that war is wrong. I cannot justify killing in my own conscience. Now, in a time when the countries of the world have the ability to almost totally destroy each other in a matter of hours, there is a desperate need to search for world peace. I feel that I must take my stand as a conscientious objector and help to further this effort to end wars, killing and destruction.

As a member of the Armed Forces I am required to work for the total war effort whether I serve as a cook, a clerk, or a corpsman. I am required to work for something my principles tell me is wrong.
* * * * *
I cannot say that I arrived at the basis of my claim through one person

from various pre-enlistment acquaintances, all attesting to the sincerity of Bolen's claim. As part of the regulatory scheme, Bolen was then interviewed by a psychiatrist, a chaplain, and a naval lieutenant "knowledgeable in policies and procedures * * * relating to conscientious objector matters." [3]

The psychiatrist did not comment on the petitioner's beliefs except to state that they were not the product of any significant psychopathology. The chaplain found that petitioner's beliefs were religious in origin and sincerely held.[4] He recommended petitioner's discharge. Lieutenant Boyd, the hearing officer, also found the petitioner sincere and recommended that the request for discharge be approved.[5] After considering the application, letters, and interview reports, and personally interviewing the petitioner, the commanding officer rec-

or one source. Rather it has been through many contacts in my life that I formed my beliefs. Many people and many sources have influenced me. I was greatly impressed by the life of Martin Luther King, a totally non-violent man. Also I have read the autobiography of Mahatma Ghandi and been influenced by it. These two men, especially, were shining examples of how leading lifes [sic] of non-violence could accomplish much. Also my religious training in the Church of God taught me that no one has the right to take a life.

I also feel that my mother, a passive and understanding person, has been a guiding force in the formation of my principles through her training and example."

3. Bupersman 1860120 ¶ 3b(4).

4. Chaplin Lefils wrote:

"1. SN Larry Andrew Bolen, USN, was interviewed by me on 21 July 1970, concerning his request for discharge from the Naval service on grounds of conscientious objection to war and all related matters. While this objection stems from the general principles of peace and the dignity and preservation of human life, and it comes from his religious upbringing, it is not directly a part of the tenets of his church. He has come to this conviction from the precepts mentioned above as taught by the church and by his parents. These strong views go back to his high school days, and have not been recently thought up.

2. The chief goal in SN Bolen's life is to help people. His interests lie in such organizations as the Peace Corps and VISTA. He is intent on furthering his education to better equip himself for this work.

3. It is my belief that this young man is sincere in his stand. He is not just trying to get out of his obligation to his country, but is trying to follow the dictates of his conscience. On the basis of our discussion, I recommend favorable action be taken on his request."

5. Lieutenant Boyd wrote:

"1. In accordance with reference (a), on 28 July 1970 SN Larry Andrew Bolen personally appeared before this Interviewing Officer and a hearing was held in order to determine said subjects [sic] elegibility [sic] for discharge as a conscientious objector.

2. A consultation with subject man appears to indicate that the feeling has always been present but was not filed with the draft board because he had a college deferment and was not pressed for an instant decision. He, however, ran short of money and had to drop out of college thereby losing his deferment elegibility [sic]. He became elegible [sic] and immediately joined the Navy to delay assignment to Vietnam. At Fort Hayes, Columbus, Ohio he was asked what field he was interested in, to which he replied—Computers. He was advised he had to obligate for two additional years for the Advanced Electronics Fields to which he at first refused but then agreed after they told him he could cancel the agreement at Great Lakes if he changed his mind. Naturally, this could not be canceled and his family at this time then wrote two letters, one to the President and one to his Congressman from Ohio. Subject man finally gave up his efforts after he was advised that by obtaining a lawyer and taking the case to court he might be able to win his case. He therefore applied as a conscientious objector and waited for results.

3. Seaman Larry Bolen appears to be a very sincere young man and is willing to work at any other duties of a helpful and peaceful nature assigned by his Selective Service Board.

4. It is therefore recommended that subjects [sic] request for discharge be approved."

ommended that Bolen's application be granted. He noted that "Seaman Bolen has established that his conscientious objection to war, in any form, is based upon a religious background, and deep moral convictions."

Upon review, the Bureau of Naval Personnel disapproved petitioner's application for discharge as a conscientious objector. In relevant part, the Chief of Naval Personnel wrote:

Current directives for submitting applications for discharge as a conscientious objector specifically state that "A request for discharge after entering naval service based solely on conscientious objection which existed but was not claimed prior to induction or enlistment shall not be considered." The interviewing officer, Lieutenant J. H. Boyd, stated in his report, "A consultation with subject man appears to indicate that the feeling has always been present but was not filed with the draft board because he had a college deferment and was not pressed for an instant decision." Chaplain Lefils in his report stated, "These strong views go back to his high school days, and have not been recently thought up." Additionally, in your application you stated that it has been through many contacts in your life that you have formed your beliefs; that your religious training in the Church of God taught you that no man has the right to take a life; and finally you stated "I also feel that my mother, a passive and understanding person, has been a guiding force in the formation of my principles through her training and example." It is clear that your objection existed prior to your enlistment.

In reviewing the Navy's decision, the determinative question before the district court and here is whether the record before the review board supplied a basis in fact for its decision that petitioner is not entitled to relief as a conscientious objector. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L. Ed. 567 (1946); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968); United States ex rel. Donham v. Resor, 436 F.2d 751 (2d Cir. 1971).

Undisputed is petitioner's sincerity as a conscientious objector. Under the pertinent regulation, Bupersman 1860120 ¶1(b), the crucial inquiry then turns to whether these views crystallized before or after entry into the service. After a careful examination of the record that was before the review board, this court is unable to find any evidence, one way or the other, with respect to crystallization. Indeed, it appears that none of the interviewing officers, including Lieutenant Boyd, even directly considered this matter.

The reasoning expressed in the report of the Chief of Naval Personnel is, under these circumstances, legally insufficient to constitute a basis in fact. While circumstantial evidence may constitute a basis in fact (cf. United States ex rel. Donham v. Resor, *supra*), and the review board may, like any fact-finder, rely on inference to reach its determination, the conclusions reached must have some logical factual support in the record. See McGehee v. McKaney, 312 F.Supp. 1372 (D.Md.1970). That the petitioner's religious experiences and mother's teachings served as sources of his beliefs does not, on this record, mean his conscientious objection to war became fixed before his enlistment. The quoted portions of the reports of the interviewing officers, when read in context, are at best entirely ambiguous on the question of crystallization. To infer from these statements a finding of crystallization is to engage in speculation.

The district court is directed to return petitioner's application to the Navy for further interviews and proceedings in accordance with this opinion.

Reversed and remanded.