Guy James **MORRISON**, Petitioner-
Appellee,

v.

**Lt. General Stanley R. LARSEN et al.,
Respondents-Appellants.**

No. 26869.

United States Court of Appeals,
Ninth Circuit.

July 28, 1971.

granted the writ and ordered Morrison's discharge. We reverse and remand.

### A. *Factual Background.*

The earliest manifestations of Morrison's conscientious objector beliefs were during a personal appearance before his selective service board in April of 1968. At that time, Morrison was appearing personally to assert his right to a I-S [student] deferment. At this hearing, he offered the board a written statement of his "political and moral attitudes." The contents of this proferred statement could certainly be considered an expression of conscientious objection to war.[2] The board ruled, however, that it would not consider the statement because it was irrelevant to Morrison's I-S deferment request. Morrison retained the statement and made no further attempt to submit the material to the board prior to receiving his induction order.

After receiving his induction notice, Morrison completed and returned a C.O. Form 150 to his local board. After various proceedings within the Selective Service System, Morrison was again ordered to report and submitted to induction into the Army on June 16, 1969.

Marshall Tamor Golding (argued), Dept. of Justice, Washington, D. C., James L. Browning, U. S. Atty., San Francisco, Cal., for respondents-appellants.

Robert Mitchell Zweig (argued), of Hodge, Green & Zweig, San Francisco, Cal., for petitioner-appellee.

Before KOELSCH and CARTER, Circuit Judges, and SMITH,* District Judge.

JAMES M. CARTER, Circuit Judge.

Guy James Morrison, serving in the United States Army, filed for discharge as a conscientious objector under the provisions of Army Regulation 635–20.[1] His application was ultimately denied by the Conscientious Objector Review Board [CORB] and by the Adjutant General. Morrison filed a petition for writ of habeas corpus in the district court on the ground that the Army had wrongfully denied him discharge. The district court

---

* Hon. Russell E. Smith, Chief United States District Judge, District of Montana, sitting by designation.

1. "3. Policy. a. Consideration will be given to requests for separation based on bona fide conscientious objection to participation in war, in any form, when such objection develops subsequent to entry into the active military service.

b. Federal courts have held that a claim to exemption from military service under Selective Service laws must be interposed prior to notice of induction, and failure to make timely claim for exemption constitutes a waiver of the right to claim. However, claims based on conscientious objection growing out of experiences prior to entering military service, but which did not become fixed until entry into the service, will be considered. Requests for discharge after entering military service will not be accepted when—(1) Based solely on conscientious objection which existed, but which was not claimed prior to induction, enlistment, or entry on active duty or active duty for training.

(2) Based solely on conscientious objection claimed and denied by the Selective Service System prior to induction."

2. Excerpts from Morrison's 4/29/68 statement of "political and moral" attitudes:
"I could never kill anyone. I believe with all my heart in the commandment which prescribes that '*Thou shalt not kill*'. It would destroy me emotionally if under any circumstances I destroyed the life of another human being."
* * * * *
"I believe that all war is absurd, futile, and immoral. War represents what is basest and ugliest in human nature."
If these statements, *inter alia*, are sincerely held and occupy a position in Morrison's life similar to that of religion, then the requirements of *Welsh* would appear to be satisfied. Welsh v. United States, (1970) 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308. Morrison's statements in his application to the Army clearly indicates his C.O. views are within the scope of *Welsh*. [Appendix to appellant's brief [p. 112, et seq.]

After six months of basic combat training, advanced infantry training and the Vietnam Training Course, Morrison filed for discharge from the Army as a conscientious objector under AR 635–20. Following numerous intermediate interviews, the CORB denied Morrison's application for discharge on the ground that he had requested and been denied C.O. status by the Selective Service System, and that he had "provided no convincing evidence of a change in his beliefs." The decision of the CORB is ordinarily considered final, but in this instance, at the United States Attorney's request, the Adjutant General conducted a *de novo* review of all prior proceedings. The Adjutant General determined that "Morrison's professed views were fixed prior to his induction" and, therefore, "cannot be approved under the provisions of AR 635–20."

Morrison's petition for writ of habeas corpus stated that his "beliefs have crystalized [sic] and matured since his induction into the Armed Forces and his application for discharge is thereby substantially different than the application submitted to the Selective Service System." The petition concluded with the allegation that the Army wrongfully denied Morrison's application for C.O. status under AR 635–20. The district court found that Morrison's C.O. beliefs crystallized *after* he received his induction order, and that his C.O. request had not been considered on its merits by the Selective Service System [i.e. there had been no reopening of his classification].[3] The court held that "AR 635–20 and the crystallization requirements therein should only be applied to deny a forum to persons whose claims have been heard and denied on the merits by the Selective Service System or to those who, knowing of their claims, can be said to have waived them." The court then concluded that Morrison "be discharged from the custody of the United States Army * * *" and granted the writ of habeas corpus.

B. *The Issues.*

We note at the outset that our examination here is limited to alleged errors in the Army proceedings. Morrison's habeas corpus does not complain of errors by the Selective Service System, and does not name the System or any of its personnel as defendants to this action.

---

3. Because Morrison's Form 150 was filed after the issuance of his induction order, the local board refused to reopen his I–A classification on 9/16/68 and again on 10/21/68. After each refusal, Morrison complained to the State Director, and both times the State Director requested the local board to reconsider reopening Morrison's classification. Finally, on 11/25/68, the local board minutes indicate that Morrison was "Classified to Class I–A." He was sent a new classification card and a notice that he had 30 days in which to request a personal appearance or to appeal. Morrison requested and obtained both a personal appearance and an appeal. These acts are consistent with the Board's obligations under the regulations whenever it *reopens* a classification. 32 C.F.R. §§ 1625.-12, 1625.13. When a local board reopens a classification, it is required to consider all new information on its merits. 32 C.F.R. § 1625.11.

The district court's finding that the board did not consider Morrison's C.O. claim on its merits must be based on the conclusion that, notwithstanding the apparent indicia of reopening, the board perfunctorily and summarily denied Morrison's C.O. request without giving his claims good faith consideration. In view of Morrison's claim for relief, limited to the action of the military and our disposition of this appeal on other grounds, it is not necessary that we review this ruling.

The Government's contention that there was a reopening by the local board, which was followed by both a personal appearance and an appeal within the Selective Service System, and a classification of I–A by the appeal board, is probably not determinative of the case, nor a sound basis on which to rest our decision. Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810, 1971, makes clear that where there are possible alternate reasons for an appeal board's decision, that decision will not be sustained where no reason is stated for the denial of the registrant's claim and the reclassification in I–A.

■ Our review of military determinations is said to be "the narrowest known to the law." Negre v. Larsen, (9 Cir. 1969) 418 F.2d 908, affirmed sub nom. Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168. We are limited to a determination of whether there is a basis in fact in the record for the military determination. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1945). Speer v. Hedrick, (9 Cir. 1969) 419 F.2d 804.

1. *"Late Crystallization" and AR 635–20.*

The district court found that CORB erred by denying Morrison's C.O. claim on the ground that it previously had been presented to and denied on its merits by the Selective Service System. The court determined that Morrison's claim had not been considered on its merits by the Selective Service System because of the limitations imposed by 32 C.F.R. § 1625.-2 on reopening classifications after the issuance of an induction order. Thus, the court found that the bases and beliefs for conscientious objection expressed in Morrison's Form 150 were of the "late crystallization" genre.

The district court also held that the Adjutant General's denial of Morrison's claim on review of CORB's determination was improper. The Adjutant General denied Morrison's claim because it was founded upon bases and beliefs that became fixed prior to induction. The court ruled that, because a "late crystallization" claim was involved, the Adjutant General's interpretation of AR 635–20 resulted in the denial of *any* forum to consider the beliefs asserted in Morrison's Form 150 on their merits.[4]

■ Upon examination of the record, we cannot sustain the district court's finding that Morrison's Form 150 claim was one of "late crystallization." The evidence clearly indicates that the bases and beliefs expressed in Morrison's Form 150 had crystallized *prior to* the issuance of his induction order.[5] There-

---

4. The absence of a forum in either the Selective Service System or the Army that would consider "late crystallization" cases was the basis for Judge Ely's concern in his concurring opinion in this court's *en banc* decision in Ehlert v. United States, (9 Cir. 1970) 422 F.2d 332, 335. On certiorari, the Supreme Court expressly conditioned its decision on the existence of a forum to consider "late crystallization" claims. The Court stated:

"We are assured, however, by a letter included in the briefs in this case from the General Counsel of the Army to the Department of Justice, that present practice allows presentation of such claims, and that there thus exists no possibility that late crystallizers will find themselves without a forum in which to press their claims. Our conclusion in this case is based upon that assurance. For if, contrary to that assurance, a situation should arise in which neither the local board nor the military had made available a full opportunity to present a prima facie conscientious objection claim for determination under established criteria, see Welsh v. United States, *supra*, a wholly different case would be presented."

Ehlert v. United States, (1971) 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625.

5. The record shows that Morrison supplied the Army, as part of his "Application for Conscientious Objector Status," with his original C.O. application to the Selective Service Board (Form 150). [Appendix to applicant's brief, p. 112]. Morrison also included in application to the Army, a verbatim statement of the material he tendered to the Selective Service Board on April 29, 1968. [Appendix to appellant's brief pp. 122–123].

The record is thus replete with references to the existence of Morrison's C.O. beliefs *prior to* the issuance of his induction order. For example, in Morrison's Form 150 the following statements appear:

"I have been non-violently involved out of pacifist conviction in several demonstrations against the war in Vietnam. I have spoken out against that conflict on numerous occasions.

\* \* \* \* \*

On innumerable occasions, I have discussed the moral issues raised by the existence of organized warfare with my friends. My letters to Miss Jacoby, who is writing a supporting statement on my behalf, testify to my convictions. On April 29, of 1968, when I appeared before the local board to appeal a I–A classification [actually, a personal ap-

fore, this case represents a "late filing" of C. O. beliefs and not a "late crystallization."

In discussing "late filing", this court has stated that: "If the registrant has formed conscientious objection beliefs before the order of induction, and has ample time to notify the Board to this effect and has failed to do so, he is not entitled to have his classification reopened." United States v. Kanner, (9 Cir. 1969) 416 F.2d 522, 525. Because Morrison's claim did not involve a "late crystallization" of beliefs, the Army could properly find that Morrison waived his right to assert a C.O. claim based *solely* upon those bases and beliefs (expressed in his Form 150 and the material submitted in April 1968) that existed and could have been asserted in the Selective Service System prior to the issuance of his induction order.

Morrison has not been denied a forum for the consideration of his claim. He could have tested the proceedings before the Selective Service Board either by refusing induction and raising the question in a criminal appeal or by submitting *pro forma* to induction and immediately seeking relief by habeas corpus. Instead he voluntarily submitted to induction and six months training, and then, when ordered to combat duty, raised his claim before the military by habeas corpus, asserting error in the military's determination.

### 2. *"New" Claims and AR 635–20.*

Morrison's petition declared that his C.O. beliefs "crystalized [sic] and matured since his induction into the Armed Forces and his application for discharge is thereby substantially different than the application submitted to the Selective Service System." It is, of course,

---

pearance to request a I–S deferment] I brought with me a statement of belief in the event that the board might find it relevant. I was told that the statement was not relevant, and I kept it. I enclose that statement with this application [see excerpts at note 2 *supra*]."

Several letters were filed in support of Morrison's Form 150. Lt. James Stratton stated:

"I have known Guy Morrison for four years. * * * [H]e can not reconcile himself to the taking of another human's life. For this reason, he finds war and all its surrounding aspects as inhuman and against his moral beliefs.
 This conciousness [sic] of the irrationality of war and killing has been a part of Guy's life as long as I have known him."

Miss Evelyn Jacoby stated:
"I have been a close friend of Guy Morrison for the last two and one half years. During this period of time he has frequently discussed at length with me his views about war. * * * The anticipation of being asked to participate in that form of human conflict which he considers a violation of his humanity and the humanity of all men has been the source of incredible anguish and soul searching for him for a long time. Had he realized before now that a consciencious [sic] objector status was not restricted to a specific

religious sect, he would have applied for this status two years ago. He was just recently informed of his eligibility by a friend who is a member of the American Friends Service Committee (Quakers)."

Mr. Anthony Hozeny stated:
"I have known Guy Morrison for approximately five months. During this time I have become convinced of the sincerity of his beliefs. Violence and war are repugnant to Guy's beliefs. It is appalling to him that he might ever participate, whether as a combatant or as a non-combatant affiliated with the military, in the destruction of another human life.

 * * * * *

Guy has not applied for a C.O. classification previously, first of all because he was not initially aware of his eligibility for this classification, and secondly, because the intense physical and mental anguish that his beliefs have demanded from him has made it difficult to get down his views explicitly on paper."
*See also* the excerpts from Morrison's statement of "political and moral attitudes" presented to his local board at note 2 *supra*. The only evidence supporting Morrison's assertion that his C.O. beliefs did not crystallize until after he received his induction order were his own self-serving and uncorroborated statements to that effect.

possible that the bases and beliefs supporting a C.O. claim will change significantly over a period of time as the result of reading, dialogue with others, continued introspection, and the influence of life's experiences. For example, a C.O. claim that was correctly diagnosed as insincere during selective service proceedings may subsequently become sincere as the result of traumatizing experiences in the military. Also, a registrant may have thoughts and views that have not crystallized. But once sincerely held views have crystallized, he is a conscientious objector. Further experience may strengthen or weaken these beliefs. There should be no half-and-half standard. The Selective Service Boards, the courts, and the miliary in various situations, have the obligation to determine whether at a certain time, views and beliefs of a C.O. nature have crystallized or become fixed.

 Recognizing this evolutionary characteristic of C.O. beliefs, AR 635–20 provides that the Army will consider "claims based on conscientious objection *growing out of experiences prior* to entering military service, but which did not become *fixed* until entry into the service * * *" [Emphasis added]. The regulation also provides that it will not consider those claims that are based solely on beliefs that existed prior to induction. In light of *Ehlert v. United States,* (1971) 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625, we assume that this regulation is presently being interpreted to provide consideration for claims that did not become fixed until after the issuance of an induction order.[6] Thus, it is only those C.O. claims that are based solely upon pre-induction order beliefs that will not be considered by the army.

Morrison's application for discharge contained assertions that his beliefs and the bases for his beliefs changed after his induction into the Army and are not the same as those presented to the Selective Service System. In conclusion he stated:

"Finally, how have my views changed since coming into the army? I would say that the change has been both quantitative, in the sense that my commitment to the sanctity of life has deepened, and quisitative, in the sense that I have done a good deal of research and reflection on the theory and practice of non-violence as a means of resolving conflict, since for one who feels as I do, non-violent methods are the only acceptable ones." [Appendix to appellant's brief, p. 117].

Thus, he asserts that his C.O. claim is *not* based solely upon pre-induction order beliefs. The CORB found that "Morrison has provided no convincing evidence of a change in his belief." The district court, however, did not reach the issue because of its disposition of the case on other grounds.

 The district court erred in finding that Morrison's views expressed to the Army were of the "late crystallization" type and in overruling the decision of CORB that Morrison had "presented no convincing evidence of a change in his beliefs," and the decision of the Adjutant General that "Morrison's professed views were fixed prior to his induction." This

6. The Supreme Court in Ehlert v. United States, makes clear that a registrant is entitled to an in-service determination of his claim on the merits only where there was a late crystallization of his beliefs. The opinion speaks of those whose "conscientious objection" crystallized after notice of induction (402 U.S. pp. 103 and 106, 91 S.Ct. 1319), whose "views are late in crystallizing" (402 U.S. p. 103, 91 S.Ct. 1319), whose "conscientious objection ripens" (Id.), and whose "conscientious scruples took shape" belatedly (Id.).

As to the claims of those whose alleged conscientious objection has crystallized *between notice and induction,* the Court concluded that it would base its decision upon the Army's assurance that, notwithstanding the apparent limitations of AR 635–20, a forum would be provided in the Army to consider "late crystallization" claims. (402 U.S. at p. 107, 91 S.Ct. 1319). *See* note 4 *supra.*

There is no claim in the case at bar that crystallization of beliefs occurred in the "no man's land" *between notice of induction and induction.*

was the precise issue presented by Morrison's petition for Habeas Corpus. The Army's finding that Morrison's views had not changed and were fixed prior to induction must not be disturbed if there is a basis in fact to support it. Speer v. Hedrick, supra, Negre v. Larsen, supra, Estep v. United States, supra.

■ If Morrison was asserting before the Army a "new claim," it must be founded upon bases and beliefs that were previously unmatured or unfixed before the induction order. A mere strengthening of prior C.O. beliefs is not sufficient. If he was a bona fide C.O. prior to his induction, then no "new basis" for that claim after induction has any bearing on the problem.

3. *Court's Order of Discharge.*

The district court ruled that Morrison's application for discharge stated a prima facie claim to C.O. status, that the Army improperly denied that claim, and, therefore, that Morrison must be discharged from the custody of the Army. The Government asserts that the court should not have summarily ordered a discharge, but should have remanded Morrison and his claim for further proceedings within the Army. We conclude that the Government's position is correct.

■ Stating a *prima facie* case of conscientious objection does not automatically entitle a serviceman to discharge. If the Army has erred in interpreting the crystallization requirements of its own regulations, then the matter should be returned to the appropriate military board for further consideration. We view the proper form of relief in such circumstances as that stated by this court in Zemke v. Larsen, (9 Cir. 1970) 434 F.2d 1281, 1283, to-wit: "[T]he district court [shall] allow the Department of the Army a reasonable time for reconsideration of appellant's application by the Conscientious Objector Review Board and for further action thereon by the Adjutant General;

failing which appellant is entitled to his release."

The case is reversed and remanded to the district court for further proceedings not inconsistent with this opinion.