George K. WARD, Plaintiff-Appellant,

v.

John A. VOLPE, as Secretary of Transportation, et al., Defendants-Appellees.

No. 72-2569.

United States Court of Appeals, Ninth Circuit.

Sept. 18, 1973.

Michael G. W. Lee (argued), Joseph Morozumi, Oakland, Cal., for plaintiff-appellant.

John D. Link, Asst. U. S. Atty. (argued), James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for defendants-appellees.

Before TUTTLE,* TRASK and GOODWIN, Circuit Judges.

TUTTLE, Circuit Judge:

Appellant George Ward appeals from an order of the district court denying

* Of the Fifth Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

his petition for writ of habeas corpus and request for declaratory judgment, injunctive relief, and mandamus on the ground that the Coast Guard wrongfully denied his application for discharge from the service as a conscientious objector. We reverse and remand with directions that the district court grant Ward's prayer for habeas corpus relief.

## I.

Ward enlisted in the United States Coast Guard on May 16, 1969. He filed an application for conscientious objector discharge on September 8, 1971 pursuant to Commandant Instruction 1900.2 with his commanding officer. Ward's application stated, in part:

"Life is sacred, and it is much more valuable than anything that wars have caused people to die for. In fact life is the only thing that a human being has which has true value.

. . . . .

". . . I do not say that I have always practiced my beliefs perfectly, everyone has moral lapses, but the military service has taken my ability to follow my conscience out of my hands. The ability to control my physical acts (even those of a personal nature) has been given to someone who does not have my conscience, and he has actually been given the authority to try to change my conscience.

. . . . .

"However, it was not until the fall of 1967, my senior year of college at the height of the controversy over the Vietnam War, that I came to a full realization that there had never been and there never could be such a thing as a 'just' war . . . .

"In May of 1969 when I received my draft notice and, subsequently, enlisted in the Coast Guard, my beliefs had not developed to the state where I considered participation in a military organization, in any capacity, as a contribution to this country's ability to wage war. When I was working for the Department of the Navy as a civilian, I did not see my work there as contributing to the ravaging of an innocent country and the murder of its population. However, I could not now go back to that job.

". . . At that time I objected to war only to the extent that I could not personally take an active part in killing another human being. But now I realize that I must take some of the responsibility for the senseless murder, even if it is not my bullets that are doing the killing.

"However, I was able to enlist in the Coast Guard, and I thought that duty in the Coast Guard would not conflict with my conscience.

"At that time I thought the Coast Guard to be a military organization in name only. I knew that the Coast Guard had military uniforms and was considered an armed service, but I still considered it an alternate service whose functions were primarily civil in spite of outward appearances. I thought that I could fulfill my obligation to serve my country without participating in war, but now I feel that by participating in any military organization I am performing a severe disservice to both my country and to mankind. . . . But as time progressed I became more and more disgusted with the military system as a way of life and with myself for giving tacit consent and support to this country's warmaking inclinations.

. . . . .

"For the past year I've been doing a lot of talking to veterans of Vietnam and a little corresponding with men serving duty in Vietnam. I have talked with Vietnam veterans at airports and bus terminals, and I have written to men whose letters I've seen in G.I. newspapers. These correspondents and conversations, my conversations with men in my unit, and my experience in the service have solidified my religious opposition to war and have radicalized my political beliefs to the extent that I can no longer satisfy my conscience by telling my-

self that I do not participate directly in war. My life is becoming more miserable every day because it has become impossible to make my job compatible with my conscience, and the fact that I will soon be supervising the loading of ammunition for Vietnam will, I am afraid, bring this conflict of job and conscience to a head."

In an addendum to his application Ward stated:

"Both the psychiatrist and my commanding officers have recommended that I be granted non-combatant status instead of a discharge. I have asked for a discharge because, as I have stated I find participation in a military organization in any capacity contradictory to my conscience. Granted, part of the Coast Guard's mission is humanitarian, but, nonetheless, Coast Guardsmen are trained to kill human beings at the firing range, and we are disciplined to unquestionably obey any order from a superior without any regard to our own individual consciences. . . . Admittedly, the Coast Guard performs some very necessary humanitarian services which save rather than destroy life, but it is inconsistent and unnecessary for these services to be performed by a military organization, and I don't think it is possible to find a job within the military that I could perform with a guarantee that I would never be asked to kill another human being."

In addition to his own statement, Ward filed five letters attesting to his beliefs from the clergy and friends.

Ward was interviewed by LCDR Richard E. MacCullagh, a military chaplain, on October 12, 1971 concerning his conscientious objector application. The chaplain reported, "Within the limits of his philosophy he is sincere. My personal opinion is that his objection is more philosophical than religious."

On October 13, 1971 Ward was interviewed by a military medical officer. The doctor stated: "In recent times, this man has crystallized his ideas which make active participation in the military difficult for him. . . . There is no doubt in my mind that this man is sincere in his beliefs." He concluded by recommending that Ward be granted a non-combatant conscientious objector status.

Subsequently, Ward's commanding officer, E. G. O'Keefe USCG Port Safety Station, Concord, California, recommended that Ward be considered for non-combatant conscientious objector status. O'Keefe stated in his letter that Ward was sincere in his beliefs, but that since he had entered into a contract with the Coast Guard, the contract should be honored by both parties. For that reason, he suggested non-combatant duties rather than discharge.

A hearing on Ward's application for discharge for conscientious objection to service was held on December 16, 1971 by Officer LCDR Floyd W. White, Jr. The report filed by White concluded:

"While I am convinced that Petty Officer WARD is conscientiously opposed to any war for any reason, based on deeply held moral convictions; I have had some difficulty trying to pin down exactly when these beliefs fully developed. The following factors suggest that there may have been no substantial change in belief from that held prior to his Coast Guard enlistment:

"(a) That Petty Officer WARD had stopped attending organized religious services approximately four years prior to Coast Guard enlistment, and still does not attend them.

"(b) That Petty Officer WARD had completed his university education, and was approximately 22 years old at the time of his enlistment.

"(c) That Petty Officer WARD has espoused the doctrine of individualism in religious belief since his youth.

"(d) That Petty Officer WARD states in his application that he came to a realization as early as 1967 that there could *never be a just war*.

"(e) That Petty Officer WARD, by his own admission, joined the Coast Guard to avoid the draft.

"I have further considered the following factors as tending to show that Petty Officer WARD's beliefs have undergone a substantial change subsequent to enlistment in the Coast Guard:

"(a) That, Petty Officer WARD, by his own admission, joined the Coast Guard to avoid the draft (I feel that this cuts both ways).

"(b) That Petty Officer WARD applied for OCS while in recruit training.

"(c) That Petty Officer WARD finished second in his class at Quartermaster school and was honor graduate at Signalman school.

"(d) That Petty Officer WARD has a very substantial portion of his military obligation already completed.

"(e) That Petty Officer WARD has not been a serious disciplinary problem up to this point.

"(f) That Petty Officer WARD did not try to fabricate a specific event to base his 'crystallization of belief' on.

"On full consideration of all the factors mentioned above, and on the record and hearing material in general; realizing that the applicant has the burden of persuasion in this matter; I have been unable to conclude that there has been any substantial change in the applicant's belief following his enlistment in the Coast Guard. I, therefore, feel compelled under present criteria, to recommend that Petty Officer WARD's request for discharge be disapproved. I have been sufficiently bothered by this recommendation, however, so as to cause me to set forth the above factors for your independent evaluation of when Petty Officer WARD's present beliefs may have fully materialized. As Petty Officer WARD submitted his application as a request for discharge, under current DOD instructions, I am unable to recommend his assignment to non-combatant duties."

This recommendation was based on Commandant Instruction 1900.2, which in part provides that conscientious objector beliefs which were not claimed prior to entering the Coast Guard cannot form the basis for a discharge as an in-service conscientious objector.[1]

Ward's application was subsequently reviewed by his acting commander, S. K. Frick, who without interviewing Ward personally concurred in the hearing officer's report. In addition, Frick stated, "While the applicant finds continued service in the Coast Guard objectionable to his conscience because it indirectly supports the waging of war, this objection emanates more from an inability to adjust and accept the military system in general rather than from such a change in or crystallization of his religion, moral or ethical beliefs which could qualify him for discharge as a conscientious objector."

In response to a letter from Ward's attorney concerning the final disposition of Ward's conscientious objector application, the Coast Guard Commander, H. H. Kothe, replied:

"Petty Officer WARD's application was denied because the preponderance

---

1. Commandant Instruction 1900.2 A 6. a. (1) (a, b) provides: "No member of the Coast Guard who possessed conscientious objection beliefs before entering military service is eligible for classification as a conscientious objector if:

(a) his beliefs satisfied the requirements for classification as a conscientious objector pursuant to Section 6(j) of the Military Selective Service Act of 1967, as amended (50 U.S.C. App. § 456(j)) and other provisions of law, and he failed to request classification as a conscientious objector by the Selective Service System; or

(b) he requested classification as a conscientious objector before entering military service, and his request was denied on the merits by the Selective Service System, and his request for classification as a conscientious objector is based upon essentially the same grounds, or supported by essentially the same evidence, as the request which was denied by the Selective Service System."

of the evidence shows that his beliefs and convictions were formulated and held before he enlisted in the Coast Guard and thus he was ineligible for discharge as a conscientious objector." The evidence relied on by the commander included the above quoted portion of the hearing officer's report, a letter from Mr. E. P. Deckart,[2] and the concurrence of Frick in the hearing officer's report and the additional reason of Frick quoted above.

On April 28, 1972 Ward filed an action for declaratory relief, injunction, mandamus, and habeas corpus with the district court. The district court on July 19, 1972, after conducting an in-chambers conference on the petition, denied Ward's action for relief.

## II.

██ ██ Federal courts have a narrow range of review in conscientious objector claims of in-service personnel. The scope of review is limited to ascertaining whether there is any basis in fact for the finding that an individual has not presented a valid conscientious objector claim. Negre v. Larsen, 418 F. 2d 908 (9th Cir. 1969), aff'd sub nom., Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); Bishop v. United States, 412 F.2d 1064 (9th Cir. 1969). From our review of the record, we conclude that there was no basis in fact for the Coast Guard's finding that Ward held beliefs that constituted conscientious objector status prior to his enlistment.

Unlike most conscientious objector cases, the sincerity of the claimant in objecting, on religious grounds, to participation in war in any form is not at issue. The Coast Guard is not challenging Ward's sincerity of belief [3] nor that his beliefs are those of a bona fide conscientious objector. See Polsky v. Wetherill, 455 F.2d 960 (10th Cir. 1972); Ames v. Laird, 450 F.2d 314, 315 (9th Cir. 1971). The record clearly reveals that the Coast Guard has continually concluded that Ward's beliefs qualify him for conscientious objector status. In fact, the present assertion by the Coast Guard is that Ward's valid conscientious objector beliefs were formulated prior to his time of enlistment and therefore make him ineligible for discharge on conscientious objector grounds. Consequently, the issue to be determined is whether there was any basis in fact for the Coast Guard's finding that Ward's convictions crystallized

---

2. The letter from Mr. Deckart was submitted by Ward to support his conscientious objector beliefs. The portion relied on by the Coast Guard reads:

> "During our college years, Ken had been persistently involved in peaceful activities especially emphasizing his concern with civil rights. He often expressed his convictions in those years both verbally and through his actions that the only way to achieve progress was through non-violent approaches to the problems.

> "After college, Ken became more interested in political courses, particularly with our involvement in IndoChina. He has been an outspoken opponent of our involvement in this war and previous wars since that time. When Ken received his induction notice he was prepared to go to Canada rather than be drafted and become an instrument of war. At this time, he considered the Coast Guard to be a less radical alternate and a way to serve his country. Ken's ideas about this have changed since being in the Coast Guard.

> Since early 1970 I have encountered him many times on his beliefs. From this, I am convinced that Ken believes that participation in any form of military service is against his convictions."

3. Ward's acting commander, S. K. Frick, is the only person who intimated that Ward's objection "emanates more from an inability to adjust and accept the military system in general rather than from such a change in or crystallization of his religious, moral or ethical beliefs. . . ." But the courts have firmly established that opinion based on suspicion and speculation cannot satisfy the basis in fact test. Dickinson v. United States, 346 U.S. 389, 396–397, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Helwick v. Laird, 438 F.2d 959, 967 (5th Cir. 1971); Adams v. Davidson, 331 F.Supp. 612, 614 (N.D.Cal. 1970). Frick offered no rationale for his statement which is contradictory to the conclusions of the other military officers who personally interviewed Ward.

prior to enlistment and thereby under present case law and applicable Coast Guard regulations cannot form the basis for an in-service conscientious objector claim.

■ Before turning to review the basis in fact for the Coast Guard's denial of Ward's application, the possibility that an incorrect burden of proof was applied by the Coast Guard must be examined. The hearing officer stated and the government in its brief before the district court and this Court allege that Ward has the burden of proof in demonstrating that he did not hold conscientious objector beliefs prior to enlistment. This is incorrect. The law is clear that once an applicant has presented a *prima facie* showing of conscientious objection to war in any form, the burden of rebuttal shifts to the military service. Silverthorne v. Laird, 460 F.2d 1175, 1179 (5th Cir. 1972); Maynard v. United States, 409 F.2d 505 (9th Cir.), cert. denied, 396 U.S. 834, 90 S.Ct. 91, 24 L. Ed.2d 85 (1969). Ward fully evidenced his objection to war and the Coast Guard admits and does not challenge his sincerity. Therefore, it is the Coast Guard which has the burden of proving that Ward held his conscientious objector views prior to enlistment.

For two reasons the proper course is not a remand for application of the correct legal standard. First, even though the Coast Guard asserted that Ward had the burden, the Coast Guard unsuccessfully shouldered this burden of proof by enumerating the facts they thought indicated Ward's objection was fixed prior to enlistment.[4] Second, a careful examination of the record (see discussion *infra*) indicates no basis in fact under which the Coast Guard could have rebutted Ward's *prima facie* case. *Cf.* Dietrich v. Tarleton, 473 F.2d 177, 179–180 (D.C.Cir. 1972) ("While appellee was entitled to a writ, we do not think he was entitled to an order requiring immediate release. This is appropriate in

some cases, as when a court is convinced from the record that there is no substantial possibility in law of an ultimate disposition other than outright release.").

■ The question is whether Ward's application demonstrates a "late crystallization" of his conscientious objection after enlistment rather than just a "late filing" of conscientious objector beliefs. The correct legal standard for application to an in-service claim of conscientious objection is that the "objection itself—the objection to participation in war in any form—must become fixed only after entry" into the Coast Guard. Helwick v. Laird, 438 F.2d 959, 966 (5th Cir. 1971). *See* Polsky v. Wetherill, 455 F.2d 960 (10th Cir. 1972); Bolen v. Laird, 443 F.2d 457 (2nd Cir. 1971); United States ex rel. Healy v. Beatty, 424 F.2d 299 (5th Cir. 1970). "There is no requirement that the religious belief upon which this objection is based must manifest itself *only* subsequent to entry into the service. Indeed, the claimant may properly hold the same or similar religious beliefs both before and after entry into the service." 438 F.2d at 966. We agree with the Coast Guard's statement that Ward did have convictions opposing war and killing prior to his enlistment, but we find no basis in fact for the Coast Guard's holding that these beliefs crystallized into objection to war in any form, satisfying the requirements for discharge as a conscientious objector, prior to Ward's enlistment.

A finding that Ward's objection was formulated after entry into the Coast Guard, is consistent with the application of the above principle in other in-service conscientious objector cases. Polsky v. Wetherill, 455 F.2d 960 (10th Cir. 1972); Grubb v. Birdsong, 452 F.2d 516 (6th Cir. 1971); Ames v. Laird, 450 F. 2d 315 (9th Cir. 1971); Morrison v. Larsen, 446 F.2d 250 (9th Cir. 1971); Bolen v. Laird, 443 F.2d 457 (2nd Cir.

4. This is aptly demonstrated by the Coast Guard commander's, H. H. Kothe, letter to

Ward's attorney dated April 7, 1972 and quoted substantially *supra*.

1971); United States ex rel. Healy v. Beatty, 424 F.2d 299 (5th Cir. 1970); Goodwin v. Laird, 317 F.Supp. 863 (N. D.Cal.1970); Rautenstrauch v. Secretary of Defense, 313 F.Supp. 170, 176 (W.D.Tex.1970). In the majority of these cases the court found that the conscientious objector applicant had manifested *some* beliefs objecting to war before entry into the service but that these prior beliefs alone did not disqualify the applicant. Polsky v. Wetherill, *supra;* Bolen v. Laird, *supra;* Goodwin v. Laird, *supra;* Rautenstrauch v. Secretary of Defense, *supra.* The court in *Polsky* pointed out:

> "It is undisputed that Polsky's religious views did not change after he entered the service. Rather, his solid religious background laid the foundation for the crisis of conscience he encountered in reality when, for the first time in his life, he was faced with the actuality of violence." 455 F.2d at 961–62.

And in *Goodwin* the court noted:

> " 'Crystallization' reflects a very subtle psychological process. For some persons just reading and discussing is enough to cause them to make the mental and emotional commitment to oppose participation in war. Other persons, like petitioner, need to go through the actual experience of combat training, the experience of learning to handle and to use weapons of destruction before their beliefs crystallize into commitment." 317 F.Supp. at 866.

In the present case Ward had experienced basic training and several years of actual service. The record reflects that during this time he became more and more apprehensive about his military service. He was dilatory in qualifying on the firing range because of his solidifying objection to war. His assignment to supervise the loading of ammunition for Vietnam and the possibility of violence even in non-combatant duties added to the crystallization of his objection. Also, his discussion and correspondence with Vietnam veterans contributed to his objections. On considering these undisputed facts with the rest of the record, it is clear that Ward has gone further than necessary to place the burden on the Coast Guard to rebut his claim. He has made a strong showing not only of the existence of his conviction but also that it crystallized after his enlistment.

In denying Ward's discharge the Commander of the Coast Guard based his decision on the reasons given by the hearing officer, a statement in the letter from E. P. Deckart, and the opinion of Ward's acting commander. An examination of these indices reveals only that Ward held *some general* beliefs opposing war. There is no evidence in the record that supports a finding that Ward's final conviction had crystallized before he enlisted. Ward in his conscientious objector application freely admits that the reason he enlisted in the Coast Guard was to avoid service in more combatant military forces. But to say his beliefs which have now crystallized into objection to service with *any* military organization, are the same beliefs which he held prior to enlistment is belied by Ward's enlistment. In fact at the time he enlisted he specifically signed a statement that he was not a conscientious objector. The hearing officer, himself, had substantial doubt as to whether his conclusion was correct, and listed a number of factors supporting the fact of Ward's subsequent formulation of objection to war.[5] We conclude, therefore, that the Coast Guard's denial of Ward's

---

5. In fact it is entirely possible that the hearing officer would have granted Ward's request if he had properly applied the burden of proof. In his report the officer stated: "On full consideration of all the factors mentioned above, and on the record and hearing materials in general; realizing that the applicant has the burden of persuasion in this matter; I have been unable to conclude that there has been any substantial change in the applicant's belief following his enlistment in the Coast Guard."

application for discharge on conscientious objector grounds has no basis in fact.[6]

Reversed and remanded.

---

6. Having granted the relief requested, there is no need to reach the other issues raised by appellant.