**UNITED STATES ex rel. Jeffrey FOSTER, Petitioner,**

v.

**James R. SCHLESINGER, Secretary of Defense, et al., Respondents.**

**No. 74 Civ. 2994.**

United States District Court,
S. D. New York.

Sept. 13, 1974.

Rabinowitz, Boudin & Standard, New York City by Michael B. Standard, New York City, of counsel, for petitioner.

Paul J. Curran, U. S. Atty. by Louis G. Corsi, Asst. U. S. Atty., of counsel, for respondents.

OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Petitioner, Jeffrey Foster, is a psychiatrist who holds the rank of lieutenant as a commissioned officer in the United States Navy. In 1966, Dr. Foster, then a medical student, enrolled in the Ensign 1915 Program under which a medical student joins the Naval Reserve as a commissioned officer and is permitted to postpone active duty until his completion of medical school and internship. During his internship Dr. Foster enrolled in a second program, the Berry Plan, which further delayed his active service until after the completion of his residency. In the summer of 1973, as a result of administrative confusion, petitioner received a communication that unless he applied for Berry Plan status he would be called up for active duty. Thereafter, in September 1973, Dr. Foster tendered his resignation from the United States Naval Reserve. After considerable administrative confusion which has no bearing on the merits of the case, Dr. Foster's resignation was refused on March 4, 1974. On March 20, 1974, petitioner formally applied for discharge as a conscientious objector to all war.

The criteria to be applied to this application are set forth in 32 C.F.R. § 730.18. The regulation provides in pertinent part that:

"After entering naval service, a request for discharge based solely on conscientious objection which existed but was not claimed prior to induction or enlistment shall not be considered if such beliefs satisfied the requirements for classification as a conscientious objector . . . and the member failed to request classification as a conscientious objector by the Selective Service System . . . . Claims growing out of the experiences prior to entering military service but which did not become fixed until after entry into the service will be considered."

It is Dr. Foster's argument that both his application for discharge and his earlier resignation were prompted by the crystallization in the summer of 1973 of his anti-military beliefs. It is petitioner's contention, that the process of crystallization was triggered by the concurrence of the naval notification of his impending active service and his treatment of a young girl dying of leukemia. The record consists of Dr. Foster's statement of beliefs; letters from his wife, his psychiatrist and from friends; interviews, as required by Naval regulations, with a Navy psychiatrist and a Chaplain; and a hearing before an investigating officer at which both Dr. Foster and his psychiatrist, Dr. Joel Markowitz, testified.

Despite the investigating officer's recommendation that Dr. Foster be discharged, the Chief of Naval Personnel denied petitioner's request for a discharge and ordered him to report for active duty on July 15, 1974. On the day that he was to report for duty Dr. Foster filed a petition for a writ of habeas corpus and the Navy consented to the entry of a temporary restraining order until a hearing to be held on July 25, 1974 on petitioner's request for the writ of habeas corpus, and for a preliminary injunction. Oral argument was heard on July 25, 1974, at which time the parties agreed to an extension of the temporary restraining order while the matter was *sub judice.*

The standard of review to be applied to the Chief of Naval Personnel's decision to deny Dr. Foster's request for a discharge was clearly set out in Nurnberg v. Froehlke, 489 F.2d 843 (2d Cir. 1973), a case which was factually very similar to the case at hand. That standard is:

" '[W]hether on this record there is a basis in fact for disbelieving petitioner's claim that his conscientious objector beliefs became fixed only when faced with the call to active service.' " Nurnberg v. Froehlke, 489 F.2d at 846, quoting the district court's opinion in the same case, 355 F.Supp. 1187, 1197 (S.D.N.Y.1973).

As the court in United States ex rel. Checkman v. Laird, 469 F.2d 773, 778 (2d Cir. 1972) pointed out, an "objective basis" for disbelieving the applicant must amount to more than a mere scintilla of evidence; however, the evidence need not preponderate. Nurnberg v. Froehlke, 489 F.2d at 847. The *Nurnberg* court made it clear that so long as there was some evidence to support it, the decision of the military should be sustained.

The only issue then is whether or not there is some evidence in the record which would support a finding that petitioner's conscientious objection crystallized prior to his enrolling in the Ensign 1915 Program since it was this finding on which the Chief of Naval Personnel based his denial of a discharge to Dr. Foster. Petitioner points to a number of cases in which district courts have rejected the finding of the military. Most of these cases turned on incomplete records in which there was no evidence as to when the crystallization of the petitioner's belief occurred. Cf., e. g., Bolen v. Laird, 443 F.2d 457 (2d Cir. 1971); McGehee v. McKaney, 312 F.Supp. 1372

(D.Md.1970); Talford v. Seaman, 306 F.Supp. 941 (D.Md.1969). The case at hand suffers from no such deficiency in the record.

There is ample evidence of petitioner's thinking from the time before he entered the Naval Reserve up until the present. In addition to Dr. Foster's own detailed application for discharge there is his testimony, the testimony of his psychiatrist, the reports of a Naval Chaplain and psychiatrist and letters from Dr. Foster's wife and friends. There is evidence that Dr. Foster has long objected to violence. Dr. Markowitz, petitioner's psychiatrist, testified to an abhorrence of violence by petitioner which dates back to his beginning therapy fourteen years ago. Both Dr. Foster and his psychiatrist spoke of Dr. Foster's objection to the Vietnam War. Both pointed to a clipping from an article by George Wald in March, 1966 which petitioner had saved as reflective of the development of his personal philosophy of man's role in the universe. Likewise, they point to a 400 page thesis written by Dr. Foster before he entered the Ensign 1915 Program as yet another proof of the sincerity of his moral conviction. Indeed, there is no dispute as to the sincerity of petitioner's beliefs, but only as to the time of their crystallization.

To be sure there is evidence on the other side which could lead to a contrary conclusion. However, that is not the issue here. The only issue is, as stated above, whether there is a "basis in fact" to support the finding by the Chief of Naval Personnel that crystallization had occurred prior to Dr. Foster's enrollment in the Ensign 1915 Program. Moreover, much of the evidence in support of petitioner's claim of late crystallization turns on the breakdown of his psychological defense of "denial" of his obligation to the military. A similar argument failed in Nurnberg where petitioner "had the unrealistic hope that he might not be called." Nurnberg v. Froehlke, 489 F.2d at 848.

Petitioner argues that the beliefs which he held prior to entering the Navy correspond to those held by petitioners in Goodwin v. Laird, 317 F.Supp. 863 (N.D.Cal.1970), and in McGehee v. McKaney, 312 F.Supp. 1372 (D.Md. 1970). In those cases general religious training and evidence of some reflection on the question of violence were not a basis in fact for findings of early crystallization. Clearly one's deep felt beliefs sufficient to be a true conscientious objector must begin to take shape, or at least spring from experiences which have occurred, prior to service in the armed forces even if such beliefs do not crystallize until thereafter. However, Dr. Foster's beliefs would seem to have progressed to a far more developed state than those of the petitioners in *Goodwin* or *McGehee*.

Finally, petitioner argues that the Chief of Naval Personnel ought not to have reversed the finding of the investigating officer. This would have some validity if as was true in *McGehee* and *Talford*, both cited by petitioner, the only evidence as to crystallization was a statement by petitioner himself that crystallization occurred after entry into the military. In such a case demeanor is clearly the determinative factor and the hearing or interviewing officer's opinion as to the sincerity of the petitioner is crucial. However, in Dr. Foster's case there is considerably more evidence on which the Chief of Naval Personnel could have based his determination. This is especially true since the hearing officer expressed no opinion on crystallization, but only on Dr. Foster's sincerity as to his conscientious objection. This sincerity has never been challenged by the Chief of Naval Personnel; rather, it is the length of its duration which defeats his claim.

For all of these reasons, petitioner's application for a writ of habeas corpus is denied. In light of the foregoing opinion the motion for the preliminary injunction is mooted.

So ordered.