UNITED STATES of America ex rel. John Franklin MORTON, Petitioner,

v.

Lt. Col. Willie H. McBEE, Respondent.

No. 69 C 2475.

United States District Court, N. D. Illinois, E. D.

March 5, 1970.

Richard J. Stevens, Tenney, Bentley, Howell, Askow & Lewis, Chicago, Ill., for plaintiff.

Thomas Foran, U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

Petitioner came before this Court on December 1, 1969 on a petition for a writ of habeas corpus urging that this Court grant a temporary restraining order until such time as the respondent could answer or otherwise plead.[1]

Jurisdiction of the Court is based on 28 U.S.C. § 2241(a), §§ 2241(c) (1), 2241(c) (3) and 28 U.S.C. § 1651. Respondent has not contested the propriety of our entertaining jurisdiction.

The relevant facts are as follows. Petitioner is a registrant of Selective Service Board number 216. Within the appropriate time period, he requested and was granted a personal appearance before the Board. At his appearance on September 19, 1968, petitioner requested a II–A deferment because of his activities with Volunteer Projects, Inc., a social service agency which operated under the auspices of the Department of Labor. The Board refused petitioner's II–A classification and retained petitioner within class I–A. Petitioner appealed to the Selective Service Appeal Board for the State of Illinois on December 23, 1968. The Appeal Board affirmed the local board's I–A determination.

■ Petitioner then sought leave of the local board in December of 1968 to reopen his classification and to apply for a I–O "conscientious objector" status based upon his "matured and crystalized" religious views. Petitioner filed the appropriate documents and claimed therein that he had presented a prima facie case for exemption as a conscientious objector. Before local board 216 reopened petitioner's classification to consider his conscientious objector's sta-

tus, it mailed petitioner an induction order. That order was admittedly illegal and void. United States v. Freeman, 388 F.2d 246 (7 Cir. 1967); 32 C.F.R. sec. 1622.14. Military Selective Service Act of 1967, sec. 6(j), 50 U.S.C.App. 456(j). On February 25, 1969, the board cancelled the void induction order and reopened petitioner's classification.

Prior to a further personal appearance on the question of a I–O classification, petitioner furnished the board with additional and supplemental information supporting his religious beliefs. On May 20, 1969, petitioner appeared before the board, and on May 21, 1969 the board refused to grant his request. Another appeal was taken to the State Selective Service Appeal Board. There the local board's determination was again affirmed.

On September 1, 1969, petitioner became engaged in full time employment at the University of Illinois. Since then, he has been teaching and doing research as a member of the political science department and the public affairs department of that University. Because of this employment, petitioner again sought a II–A classification. The local board, however, refused to reopen petitioner's classification. In so refusing, the board made the finding that there was "* * * no change in your status resulting from circumstances over which you had no control."

On November 10, 1969, petitioner was ordered to report for induction at Eureka, Illinois on December 1, 1969. Petitioner reported for induction as ordered and was transported to the Armed Forces Examining and Entrance Station in Chicago. Prior to his release by order of this Court on February 16, 1970, petitioner was held in the custody of respondent, pursuant to the induction order, pending the outcome of this lawsuit.

Petitioner contends that his present induction was unlawful because the in-

1. Petitioner sought a temporary restraining order so that his presence within the jurisdiction could be preserved as he was subject to immediate transportation to another jurisdiction.

duction order was issued pursuant to an improper classification. He claims that there was no basis in fact to support the board's decision to deny him a I–O classification. Petitioner argues that since there is nothing in his file to rebut his prima facie case for a I–O classification, the local board was, as a matter of law, in error.

Respondent contends that the issue is whether a "basis-in-fact" existed for the local board's denial of petitioner's conscientious objector application. He argues that such a basis in fact existed because the views expressed by petitioner are essentially political, sociological or philosophical.

Petitioner avers further that the local board failed to provide him with any ground for its determination and that such a failure deprived him of an opportunity to explain or to rebut the findings of the board on appeal and thereby avail himself of an effective administrative review.

■ We agree with respondent, that the issue before us is not the veracity of the petitioner, but rather whether or not there is a "basis-in-fact" for the local board's denial of petitioner's "C–O" application. Respondent is also correct in his contention that the mere fact the local board reopened petitioner's case, accorded him a personal appearance, deliberated upon his claim for exemption, denied the classification and transmitted the entire file for the Appeal Board's consideration, does not warrant the assumption that a prima facie case had been established. Considerable dispute exists as to whether or not petitioner has established a prima facie conscientious objector case. Notwithstanding, we do not pass on this question, for it is not for district courts to sit "* * * as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations." Witmer v. United States, 348 U.S. 375, 380, 381, 75 S.Ct. 392, 395, 99 L.Ed. 428 (1955). The cases are replete with ad-

monitions limiting the scope of judicial review of Selective Service Board determinations. See, also, United States v. Haffner, 301 F.Supp 828 (D.C.Haw. 1969). Despite such limitations, it is clear that a district court can, upon a showing of "no basis in fact," overturn the local board's determination, Dickinson v. United States, 346 U.S. 389, 74 S. Ct. 152, 98 L.Ed. 132 (1953).

■ Following the submission of the petitioner's entire conscientious objector application and after a hearing, petitioner was denied I–O classification by the local board with only a general conclusory statement that the expressed views of the registrant did not meet the requirements of Class I–O. A local draft board's denial of a I–O classification without delineating in what respect the registrant failed to meet the statutory standard prevents any effective review of their action and precludes the appeals board or a district court from intelligently determining that there was or was not a basis in fact for their determination. As indicated earlier, we will not intervene unless there is no "basis-in-fact" for a board's determination or an appeals board's affirmance thereof. Without any finding by the local board as to why a requested classification was denied, however, it is impossible to tell on what ground the board acted. The board here may indeed have had a proper basis in fact for their determination, but the record of their action fails to disclose it. And it is not the proper role of a reviewing body, whether appeals board or court, to supply it.

■ Although we are not examining the substance of a petitioner's C–O file, we note that neither the local board nor the appeals board apparently questioned petitioner's sincerity. Courts have frequently held that where the local board wishes to rely upon the registrant's lack of veracity, the record must contain some statement of disbelief if the I–A classification is to be upheld on judicial review. United States v. James, 2 SSLR 3231 (5 Cir., 1969); United States v. Washington, 392 F.2d 37, 39 (6 Cir.

1968); United States v. St. Clair, 293 F. Supp. 337, 341 (E.D.N.Y.1968); United States v. Lonseth, 300 F.Supp. 857 at 859 (D.Or.1969).

■ Moreover, a local board must state its reasons for a denial when a registrant has met the statutory criteria, Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). Otherwise, a court cannot determine whether a board's denial of a requested classification was based on a belief that the registrant's statements, even if true, did not entitle him to the classification or on the reasonable disbelief of certain allegations necessary to the registrant's prima facie case. United States v. Haughton, 413 F.2d 736 at 739 (9 Cir. 1969).

■ The constitutional requirement of some specificity in a selective service record is clear. A registrant is at least entitled to be told in what way his case is defective so that he has a reasonable opportunity to obtain evidence to support it. The local board should endeavor to point out exactly what items influenced its opinion thereby providing the registrant-appellant a fair opportunity to attack those conclusions. *See* United States v. St. Clair, supra, 293 F. Supp. at 341.

■ It is argued by the government, as it has been in other selective service cases, that Congress did not require the local boards to be judicial tribunals and make specific findings. The point is made that local boards are lay organizations, consisting of untrained and unpaid members who are not equipped to make complete factual determinations of the evidence. But the mere fact that a decision making body is unpaid and untrained does not empower it to make blind judgments. It is inconsistent not only with the historic development of our legal system, but with constitutional principles of due process and fairness. It is true that Congress did not specifically require factual findings to be made by the local board but board decisions are reviewable, and absent some indication of the underlying basis for the local board's conclusion, intelligent review is impossible. This does not necessarily mean detailed findings of fact and conclusions of law such as a court would enter, but some specific suggestion of the local board's determination of the reasons for the board's action other than a general conclusion that the registrant failed to meet the requirements for a I–O classification.

■ To illustrate the dilemma a reviewing body faces absent any specification of grounds, let us assume that the local board here believed that the registrant did not have a conscientious objection to war because he did not believe in a divine being or in a God. The board would be legally incorrect and there would be no basis-in-fact for its decision, but without an explanatory expression of its grounds, a reviewing body would never know. Alternatively, the board may have doubted the bona fides of registrant's professed conscientious objection to war in the light of his various efforts to avoid induction, a valid basis-in-fact for its action. We emphasize that we just do not know why the local board refused to grant petitioner a I–O classification because what is before us is suceptible of almost endless interpretation.

■ The task of a reviewing body is not to search the record for some basis to affirm. Rather, the system requires that the reviewing body have before it some idea of the basis for the local board's determination.

For the above reasons, the petition for a writ of habeas corpus is granted.[2]

2. The issuance of this writ, of course, in no way prejudices Local Board 216 from reconsidering petitioner's file and reaching whatever conclusion its findings support.