Private Willard **GOODWIN**, II, Petitioner,

v.

**Melvin R. LAIRD, etc., et al., Respondents.**

**No. C–70 808.**

United States District Court, N. D. California.

June 19, 1970.

Steve A. Slatkow, Legal Aid Society of Monterey County, Seaside, Cal., for petitioner.

James L. Browning, Jr., U. S. Atty., Richard F. Locke, Asst. U. S. Atty., San Francisco, Cal., for respondents.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

ZIRPOLI, District Judge.

Petitioner was inducted in September, 1969, and filed an application for discharge as a conscientious objector in December, 1969. His company commander recommended disapproval of petitioner's application. His battalion executive officer recommended disapproval stating that petitioner's beliefs were not primarily religious, but were based on "introspection and personal experience." The brigade commander and the commanding general of Fort Ord recommended approval. Aside from the recommendation of the unit commander none of the above persons have any authority under the applicable regulation to determine whether or not petitioner satisfies the requirements for a conscientious objector status.[1]

The army regulations give primary authority in determining a serviceman's claim of conscientious objection to the "chaplain" and to "an officer in the grade of O-3, or higher, who is knowledgeable in policies and procedures relating to conscientious objector matters."

See AR 635-20, paras. c and d; Miller v. Laird, 318 F.Supp. 1401 (N.D.Cal. 4/28/70).

The chaplain found petitioner sincere in his religious convictions. The hearing officer also recommended approval and specifically found that petitioner's beliefs had become fixed as a "direct result of basic combat training." These two recommendations would normally justify a conclusion that petitioner should be discharged pursuant to Army Regulation 635-20. However, here the Conscientious Objector Review Board disapproved the application holding, contrary to the O-3 hearing officer, that petitioner's views became fixed prior to his entry into the active military service.

■ After reviewing the file, the court finds that there was no basis in fact for the Board's disapproval. The Board based its decision on four factors:

(1) Petitioner's religious training from the ages of five to twelve;

(2) His essay on Thoreau and civil disobedience written while in college;

(3) The character references which point out petitioner's "long-standing respect for life";

(4) A letter from his brother which stated the following:

"For the last several years I have discussed the various ideas involved in

---

1. Army Regulation 635-20 reads in its pertinent part as follows:

c. An individual requesting discharge will receive a counseling interview by a chaplain and a psychiatric interview by a psychiatrist (or medical officer if a psychiatrist is not available). The chaplain will submit a report of the interview to include comments on the sincerity of the applicant in his belief and an opinion as to the source of the belief. * * *

d. The applicant will be afforded an opportunity to appear in person (with counsel retained by him, if he desires) before an officer in the grade of O-3, or higher, who is knowledgeable in policies and procedures relating to conscientious objector matters. * * *

* * * * *

f. The application for discharge, together with the inclosure(s), DD Form 1589, reports of interviews, and the officer's recommendation or waiver required by d above will be forwarded directly from division or installation level to The Adjutant General. * * *

(1) The comment by unit commander on DA Form 2496 will include the following information:

(a) Whether approval or disapproval is recommended. The reason(s) therefor will be included.

* * * * *

(2) Subsequent forwarding comments on DA Form 2496 will include recom-

Will's decision to reject service in the Armed Forces: war, killing, universal brotherhood, and harmony with nature. I have always found my brother to honestly believe in the brotherhood of man, and that killing for any reason save immediate self defense, is an intolerable thing in man, a thing to fight in oneself. * * * Just prior to his entry into the Army, my brother and I discussed the idea of applying for a CO status."

The first three grounds given by the Board are built on fallacious reasoning. The fact that a person had some religious training in his background does not necessarily lead one to the position of a conscientious objector. Just because petitioner, at the age of 12, believed in the Sixth Commandment does not mean that at the age of 21 he would apply for a 1-O deferment. And the fact that petitioner thought about the principles of civil disobedience and wrote a paper in college regarding Thoreau does not lead to the conclusion that he was at that point in time a conscientious objector. If the above contentions of the Board were true, then no person who had been brought up with a religious or anti-militarist background could apply for a conscientious objector discharge. The very facts needed to qualify a person for discharge would become the basis for a finding that his beliefs were fixed prior to entry in the service. Such a scheme cuts against the very purpose of the regulations;[2] that is to allow the discharge of men with already existing general beliefs "growing out of experiences *prior* to entering military

service, but which did not become *fixed* until entry into the service. * * *" AR 635–20 para. 3b (emphasis added).

The fourth reason given by the Board rests on the false psychological premise that the intellect and the emotion are separable and distinct entities which do not inter-relate, and therefore, late crystallization is proof of insincerity. The Board points to the brother's letter in which he states that petitioner and he had discussed the possibility of a conscientious objector claim prior to induction. However, the Board does not give weight to the rest of the letter which states that prior to induction petitioner did not file a claim because "[h]is feelings then were that he would not do so. I believe he decided this without the full realization of what war and killing would do to his conscience. I believe also that he never realized that he might actually have to participate in war. In the fifth week of Will's BCT at Fort Ord I visited him and I believe he had come to the full realization that he was being trained to kill men and to make war. I believe his AIT assignment to the infantry was the final eye opener to this fact."

The above statements give meaning to the notion of "crystallization", for they show that a man can intellectually generalize about theories but often must go through actual experiences before feeling the emotional compulsion that causes him through his conscience to act according to his beliefs.

With regard to petitioner it was only after the actual experience of basic training[3] that he was able to state sin-

---

mendation for approval or disapproval and any other remarks that may be pertinent.

2. The regulation is not an attempt to define the psychological process of crystallization, rather, it is based on forum apportioning principles which attempt to minimize unnecessary repetition between the Selective Service and the Armed Services. See Milton v. Commanding General, et al., 316 F.Supp. 405 (N.D. Cal., 6/4/70); *Cf.*, United States v. Bornemann, 424 F.2d 1343 (2d Cir.

1970); United States v. Gearey, 368 F. 2d 144, 149–150 (2 Cir., 1966), cert. denied 389 U.S. 959, 88 S.Ct. 335, 19 L. Ed.2d 368, rehearing denied 389 U.S. 1010, 88 S.Ct. 561, 19 L.Ed.2d 611 (1967).

3. Petitioner, consistent with his brother's observations, states in his application the following: "[i]t was only during basic combat training when I was faced with the reality of being trained for war and killing and destruction that I finally awakened to my true beliefs."

cerely that, "[I]f I were to refuse an order for war, I am sure the penalties would be great. However, I cannot refuse the order of God and my conscience, the penalties would be overwhelming. My highest duty is to the law of God and that law requires that I honor life, especially human life, above all things."

"Crystallization" reflects a very subtle psychological process. For some persons just reading and discussing is enough to cause them to make the mental and emotional commitment to oppose participation in war. Other persons, like petitioner, need to go through the actual experience of combat training, the experience of learning to handle and to use weapons of destruction before their beliefs crystallize into commitment.

Given the imprecise psychological process at work the court should be careful not to interpret such crystallization process in a way which denies relief to sincere conscientious objectors.[4]

In the case before the court the petitioner's application states a prima facie case; he has adequately explained how and why his beliefs became fixed after entry to the service, and such explanation is supported by the chaplain implicitly and the hearing officer explicitly. The reasons given by the Board only point out that petitioner's claim grew "out of experiences prior to entering military service * * *" (AR 635–20 para. 3b) which is consistent with requirements for discharge. If the Board's reasons are interpreted to mean that petitioner's views did not crystallize in the Army, they are unsupported by the record and are based on a misunderstanding of the regulation's use of the term "fixed."

It is hereby ordered that Willard Goodwin's petition for a writ of habeas corpus be granted, and that, being illegally restrained of his liberty, he be discharged from the custody and control of the United States Army and custody and control of respondents.

4. The Board's reasons cannot properly be read as a finding of insincerity. In order to sustain a denial on the grounds of insincerity there must be a definite finding of disbelief of the petitioner. See United States v. James, 2 SSLR 3231 (5th Cir. 1969); United States v. Washington, 392 F.2d 37, 39 (6th Cir. 1968); United States ex rel. Morton v. McBee, 310 F.Supp. 328, 331 (N.D.Ill.1970). Furthermore, in order to make possible effective judicial review due process requires specific reasons justifying a conclusion of insincerity. See United States v. Haughton, 413 F.2d 736 (9th Cir. 1969); United States ex rel. Morton v. McBee, 310 F.Supp. 328, 331–332 (N.D. Ill.1970); United States v. St. Clair, 293 F.Supp. 337, 341 (E.D.N.Y.1969). The above is especially true in the military situation where under the regulation the chaplain who interviewed the petitioner has found petitioner sincere.

The fact that petitioner put off his decision until a "late hour" is no basis for a finding of insincerity: "[m]en of the highest standard of conscientious belief may put off their final commitment until necessity gives no choice. It has always been regarded as consistent with spirituality and nobility of character for men of conscientious scruples to continue to examine a moral problem until the final hour of decision. * * *" Silberberg v. Willis, 306 F.Supp. 1013, 1021 (D.Mass.1969), rev'd on other grounds 420 F.2d 662 (1st Cir. 1970). The above description represents the person who is guided by logical thinking in his attempt to solve problems. Such rational thought presupposes a strong ego, one which is capable of postponements, tolerant of tensions and able to judge reality according to its actual experience.