**Audrey Stella KOH, Petitioner,**

v.

**SECRETARY OF the AIR FORCE, Respondent.**

**No. C 81–3635 TEH.**

United States District Court, N.D. California.

July 16, 1982.

Peter B. Sandmann, Turner & Sandmann, San Francisco, Cal., for petitioner.

John F. Barg, Asst. U.S. Atty., Chief, Civ. Div., San Francisco, Cal., for respondent.

## ORDER AND OPINION GRANTING PETITION FOR WRIT OF HABEAS CORPUS

THELTON E. HENDERSON, District Judge.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 2241 by Petitioner Koh, who seeks a writ of habeas corpus requiring her discharge from the Air Force as a conscientious objector. After careful review of both the case law pertaining to conscientious objector discharges and the completed Administrative Record (herein cited as A.R.) concerning Dr. Koh's application for such a discharge, the Court concludes that the writ sought by the petitioner must issue.

## I. FACTS

Dr. Audrey S. Koh is a commissioned officer in the United States Air Force Reserve. Dr. Koh received her commission in 1976 pursuant to a Military Service Obligation Agreement signed in December, 1975, under the terms of which she was to receive her medical education at Air Force expense in exchange for an active duty obligation on a year-for-year basis. As a medical student, Dr. Koh began receiving benefits under this program, known as the Armed Forces Health Professions Scholarship Program (hereafter "AFHPSP"), in September, 1976.

In March, 1979, Dr. Koh, then still a medical student, sought "self-initiated elimination" (hereafter "SIE") from AFHPSP. In seeking to terminate her participation in the program, Dr. Koh cited concerns over the minimum active duty obligation, concerns over the lack of flexibility regarding military assignments and internship programs, and her feeling, based on her contact with Air Force medical practice, that she would not be happy in military medicine. Dr. Koh's request for SIE was denied by the Air Force in August, 1979.[1]

In December, 1979, Dr. Koh renewed her SIE request. Stating that the military life was not for her, Dr. Koh gave as her reasons for SIE that the Air Force is too bureaucratic, too regimented, and too sexist; that Air Force bases are too isolated; that she is against the military complex; and that she does not want to support the military-war system in any way. On March 6, 1980, the Air Force denied this second request to terminate participation in the AFHPSP.

Dr. Koh completed medical school in May, 1980, and thereafter entered a four year internship/residency program in obstetrics and gynecology at Mt. Zion Hospital in San Francisco. Dr. Koh did not seek prior Air Force approval for entry into this program, believing that her SIE application obviated the need to seek such approval. A.R. 69, 70, 113. In July, 1980, Dr. Koh sought a deferment from active duty pending completion of her residency program, A.R. 85–87, a request that the Air Force denied in December, 1980 because Dr. Koh had failed to apply to the military for first year graduate medical education. A.R. 71.

On April 8, 1981, the Air Force issued active duty orders for Dr. Koh. On May 18, 1981, Dr. Koh submitted to the Air Force an application for discharge as a conscientious objector.

---

1. While her SIE request was pending, Dr. Koh's scholarship benefits were withheld. A.R. 67. Despite the denial of her request, Dr. Koh apparently refused to accept renewed scholarship funds. A.R. 104. Dr. Koh has indicated throughout her willingness to reimburse the Air Force for benefits she received under the AFHPSP. See A.R. 113.

By the time that Dr. Koh was scheduled to report for active duty, the Secretary of the Air Force had not yet made a decision on her application for discharge. Dr. Koh therefore sought a temporary restraining order and preliminary injunction preventing the Air Force from ordering her to active duty until a decision was made on her petition for writ of habeas corpus, filed at the same time as the motion for temporary restraining order. This Court issued the temporary restraining order on September 15, 1981, but denied the preliminary injunction on December 22, 1981.[2]

Following an Air Force hearing on her application for discharge and this Court's denial of the preliminary injunction, Dr. Koh underwent a medical evaluation in anticipation of her entry onto active duty. In the course of that evaluation, Dr. Koh revealed to the examining officer that she has a "homosexual life-style." A.R. 22. The examining officer "considered the reality of [Dr. Koh's] homosexual orientation to be beyond question." Id.

The Ninth Circuit Court of Appeals subsequently reversed this Court's denial of the preliminary injunction, and the Secretary of the Air Force was informed by Order of this Court that the writ of habeas corpus sought by Dr. Koh would issue if a final decision on Dr. Koh's application for discharge as a conscientious objector was not reached by April 5, 1982. This Court's Order pursuant to the Ninth Circuit's reversal also provided that, in the event that Dr. Koh's application for discharge was denied, Dr. Koh would not be ordered to active duty until the merits of her habeas corpus petition were decided by this Court.

On March 31, 1982, the Secretary of the Air Force denied Dr. Koh's application for discharge as a conscientious objector. The Administrative Record concerning the application is now complete and on file with the Court. The petition for writ of habeas corpus, having been fully and intelligently briefed and argued by the parties, is now before the Court.

## II. APPLICABLE LEGAL STANDARDS

■ To qualify as a conscientious objector, the applicant must establish three elements: that she is opposed to war in any form, that her opposition is based on religious training and belief, as that phrase has been judicially construed, and that her objection is sincere. *Clay v. United States*, 403 U.S. 698, 700, 91 S.Ct. 2068, 2070, 29 L.Ed.2d 810 (1971); *Taylor v. Claytor*, 601 F.2d 1102, 1103 (9th Cir.1979); *see* 32 C.F.R. § 888e.10(a). Though the requirement of opposition to war in any form is self-explanatory, the remaining two elements of a conscientious objector claim require some elucidation.

■ The religious training and belief on which the applicant's opposition to war must be based is not "confined in either source or content to traditional or parochial concepts of religion." *Welsh v. United States*, 398 U.S. 333, 339, 90 S.Ct. 1792, 1796, 26 L.Ed.2d 308 (1970). Rather, the requirement is that the applicant's opposition to war "stem from [her] moral, ethical, or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions." *Id.* at 339–40, 90 S.Ct. at 1796 (emphasis supplied). Though an applicant's views may not rest solely on considerations of policy, pragmatism, or expediency, the presence of such considerations along with an applicant's moral, ethical or religious beliefs does not preclude the opposition to war from being based on religious training and belief as that phrase is interpreted by the Supreme Court. *Id.* at 342–43, 90 S.Ct. at 1797.

---

**2.** The additional briefing and argument that occurred in connection with the petition for writ of habeas corpus has persuaded the Court that it was in error in denying the application for preliminary injunction in this case. Fortunately, the Ninth Circuit's action reversing that denial provided this Court with an opportunity to carefully review the law and facts relating to this matter. This review convinces us that, in denying petitioner's request for a preliminary injunction, we committed errors similar to those committed by the Secretary in Dr. Koh's case.

Whether the applicant's beliefs are sincerely held, as they must be to establish a claim of conscientious objection, is an entirely subjective matter. *Witmer v. United States,* 348 U.S. 375, 381, 75 S.Ct. 392, 395, 99 L.Ed. 428 (1955); *Smith v. Laird,* 486 F.2d 307, 310 (10th Cir.1973); *Reinhard v. Gorman,* 471 F.Supp. 112, 114 (D.D.C.1979).

If the applicant asserts a prima facie claim of conscientious objection, the burden shifts to the government to demonstrate a "basis in fact" for denial of the application. *Taylor v. Claytor, supra,* 601 F.2d at 1103. Under the "basis in fact" test, which has been described as the narrowest known to law, *Sanger v. Seamans,* 507 F.2d 814, 816 (9th Cir.1974),

> [t]he reviewing court does not weigh the evidence for itself or ask whether there is substantial evidence to support the military authorities' denial of the applicant's request for conscientious objector status. *Witmer v. United States, supra,* 348 U.S. at 380–81 [75 S.Ct. at 395] . . . Rather, the court "search[es] the record for some affirmative evidence" to support the authorities' overt or implicit finding that the applicant "has not painted a complete or accurate picture of his activities." *Dickinson v. United States,* 346 U.S. 389, 396 [74 S.Ct. 152, 157, 98 L.Ed. 132] . . . (1953). Put another way, the reviewing court should look for "some proof that is incompatible with the applicant's claims." *Id.*

*Taylor v. Claytor, supra,* 601 F.2d at 1103.

Though the test is a narrow one, it does not convert the reviewing court into a rubber stamp for decisions made by the military. Thus, the fact that an applicant's sincerity is disbelieved by the deciding military official does not alone justify denial of a conscientious objector classification to one who has made a prima facie claim for such classification. The disbelief must be grounded on objective evidence of insincerity if it is to function as the basis for denying an applicant conscientious objector status. *United States v. Andersen,* 447 F.2d 1063, 1065 (9th Cir.1971); *United States v.*

*Hayden,* 445 F.2d 1365, 1372–73 (9th Cir. 1971). To be sufficient, such evidence must consist of "hard, provable, reliable facts." *Stauffer v. Laird,* 334 F.Supp. 571, 574 (N.D.Cal.1971), quoting *Helwick v. Laird,* 438 F.2d 959, 963 (5th Cir.1971). An opinion based on suspicion and speculation cannot satisfy the "basis in fact" test. *Ward v. Volpe,* 484 F.2d 1230, 1234 n. 3 (9th Cir. 1973); *see also United States v. Kember,* 437 F.2d 534, 535 n. 1 (9th Cir.1970), *cert. denied,* 402 U.S. 923, 91 S.Ct. 1392, 28 L.Ed.2d 662 (1971).

In determining whether a "basis in fact" exists for denying an applicant's request for classification as a conscientious objector, the reviewing court is limited to the evidence that was before the military agency that denied the request. *Armstrong v. Laird,* 456 F.2d 521, 522 (1st Cir.1972); *Keefer v. United States,* 313 F.2d 773, 776 (9th Cir.1963).

### III. DISCUSSION

Before turning to an examination of the merits of Dr. Koh's petition for writ of habeas corpus under the legal standards enunciated above, the Court must resolve an evidentiary issue that arose during the course of proceedings on the petition. The Court permitted Dr. Koh to testify with respect to the circumstances surrounding her application for discharge as a conscientious objector. In light of the respondent's objection to this testimony, the Court indicated that while the testimony would be permitted, it would be stricken from the record if the Court later determined that, under the circumstances of the case, it was inadmissible. Petitioner's arguments notwithstanding, the Court has determined that Dr. Koh's testimony should not be considered in resolving the merits of this case.

Dr. Koh relies on *Hayes v. Secretary of Defense,* 515 F.2d 668, 670–73 (D.C.Cir.1972) for the proposition that her testimony is admissible at least to the extent that it sheds light on her post-hearing statement regarding her homosexuality. *Hayes,* however, is of no assistance to petitioner here.

In that case, defaults by both parties in the administrative proceedings resulted in an agency record that failed to address the central issues in the case. *Id.* at 673. The Administrative Record in Dr. Koh's case addresses not only the central issues presented by her application for discharge, but the issue of her statement about her sexual preference as well, *see* A.R. 14–15 and 22. The circumstances of this case thus do not justify a departure from the normal rule limiting a reviewing court to consideration of the record before the Air Force. *See Armstrong v. Laird, supra,* 456 F.2d at 522; *Keefer v. United States, supra,* 313 F.2d at 776. Dr. Koh's testimony before this Court is therefore stricken from the record and is not considered in the discussion of the merits that follows.

The Secretary of the Air Force rejected Dr. Koh's application for discharge as a conscientious objector, adopting as his rationale that set out by the Office of the Judge Advocate General in its Legal Review of Dr. Koh's case. A.R. 2. Implicit in the structure of the analysis employed in the Legal Review is the fact that Dr. Koh's application for discharge asserted a prima facie case for classification as a conscientious objector. A.R. 7–8. Consistent with the structure of the Legal Review as well as the contents of petitioner's application for discharge, A.R. 124–212, this Court finds that Dr. Koh asserts all three elements necessary to establish a claim of conscientious objection and thus that she states a prima facie case for discharge as a conscientious objector. *See Taylor v. Claytor, supra,* 601 F.2d at 1103. We therefore turn to an examination of the rationale of the Legal Review relied upon by the Secretary to determine whether there is a "basis in fact" for the Secretary's decision. *See United States v. Haughton,* 413 F.2d 736, 739 (9th Cir.1969).

The Legal Review relied upon by the Secretary focuses on both the source of Dr. Koh's opposition to war and the sincerity with which she claims that opposition. With respect to the source of Dr. Koh's objection to war in any form, the Secretary contends that the Administrative Record reveals that the petitioner's views are not based on religious training and belief, but rather on considerations of pragmatism, policy and expediency. A.R. 8–9. The Secretary's analysis, however, ignores both the holding of *Welsh v. United States, supra,* 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308, and the psychological process by which Dr. Koh arrived at her opposition to war, as documented in her application for discharge.

Examining the Secretary's contentions with respect to the non-religious source of Dr. Koh's opposition to war, we note first the holding of *Welsh* that an applicant's opposition to war may stem from moral, ethical, *or* religious beliefs about what is right and wrong. 398 U.S. at 339, 90 S.Ct. at 1796. Dr. Koh's application reveals that her opposition to war in any form is based in large part on moral and ethical considerations. *See, e.g.,* A.R. 128–129, 145, 150–152. The Secretary's rationale does not challenge the existence of a moral and/or ethical basis to the petitioner's conscientious objector claim. It thus appears that Dr. Koh's claim is based on religious training and belief within the meaning of *Welsh.*

Moreover, even limiting our review of the record to the traditional religious concepts to which the Secretary incorrectly confined himself in examining Dr. Koh's application for discharge, it is clear that there is no "basis in fact" for concluding that the petitioner's beliefs are not based on religion. In reaching such a conclusion, the Secretary first observes at some length that Dr. Koh's views are based more on her "disagreeableness toward death" and her association with various political groups than on her religious training. A.R. 8. While acknowledging that Dr. Koh's beliefs appear to be "a collage of ideas drawn from religion, politics, and sociology," *id.,* the Secretary discounts the religious foundation of her views:

> Although interestingly she does not in her own writing expressly invoke the name of Jesus as authority for a moral prohibition, she does credit her Roman

Catholic faith with providing "a fundamental belief that killing is evil."

*Id.* The Secretary also notes that Dr. Koh ceased the active practice of Catholicism when she left home to attend medical school, inferring from this fact that Dr. Koh's opposition to war does not assume the place of religion in her life. *Id.* It thus appears that the Secretary believes that for a person raised as a Roman Catholic to be religiously opposed to war in any form, she must be a practising Catholic who links that opposition to the teachings of Jesus Christ. The Secretary, however, is required to concern himself with Dr. Koh's beliefs, not with his own interpretation of Roman Catholic dogma. *See Clay v. United States,* 403 U.S. 698, 700, 91 S.Ct. 2068, 2070, 29 L.Ed.2d 810 (1971).

▇ The rationale of the Legal Review, as well as the controlling case law, refutes the Secretary's conclusion that Dr. Koh's objection to war is not based on religious training and belief. As quoted above, the Legal Review on which the Secretary relies states that Dr. Koh's opposition to war is a collage of ideas drawn from a number of sources, including religion. A.R. 8. As the Supreme Court stated in *Welsh,* the fact that beliefs are based in part on considerations that are not moral, ethical, or religious does not preclude an applicant's opposition to war from being based on religious training and belief. 398 U.S. at 342–43, 90 S.Ct. at 1797. Dr. Koh's position, as the Secretary himself states, is based at least in part on ideas drawn from religion. *Welsh* requires no more.

Furthermore, *Welsh* establishes that opposition to war need not be based on traditional concepts of religion. 398 U.S. at 339, 90 S.Ct. at 1796. Dr. Koh's application reveals that, in addition to her Catholic upbringing, Taoistic influences that dominated her Chinese home life strongly affected the process by which she arrived at her opposition to war in any form. The Secretary's rationale ignores these influences, focusing instead on his own view of what is required of a conscientious objector under Catholic dogma. The Secretary's reasoning thus overlooks the clear dictate of the *Welsh* decision that an applicant's opposition to war may stem from beliefs that differ from traditional concepts of religion. Putting aside the Secretary's interpretations of Catholic theology, it is clear that Dr. Koh's opposition to war is based on religious training and belief as defined in *Welsh.*

▇ The Secretary's conclusion that the petitioner's conscientious objector claim is in fact motivated by considerations of expediency rather than by moral, ethical, or religious opposition to war in any form is also based on Dr. Koh's SIE applications. A.R. 8–9. While noting that those applications are certainly not inconsistent with conscientious objector status, *id.* at 9, the Secretary nonetheless concludes, based on a comparison of the attitudes reflected in the SIE applications to those conveyed in the application for discharge, that the conscientious objector claim is merely "a gloss" on Dr. Koh's "long-simmering disagreeableness with military service." *Id.* at 8–9. The Secretary's analysis of the SIE applications in the context of Dr. Koh's claim of conscientious objection ignores, however, the process by which the petitioner arrived at her opposition to war in any form. This process of crystallization is thoroughly documented in the Administrative Record and prevents the SIE applications from constituting a "basis in fact" for denying Dr. Koh's application for discharge.

The record is clear that Dr. Koh's conscientious objection to war had not crystallized at the time that she filed her SIE applications. *See* A.R. 8, 13, 99, 145. There was thus no reason for Dr. Koh to raise in those applications a moral or religious basis for her request for termination of her commitment to the military. The Secretary infers, however, that because Dr. Koh's formal religious training was complete at the time that the SIE applications were filed, moral or religious motivations for the SIE's should have appeared in those applications. *Id.* at 8. As the Secretary sees it, the failure to indicate such motives at the time of the SIE applications is proof that Dr. Koh's request

for discharge as a conscientious objector is "simply a new formula" designed to accomplish the goal of termination of her military commitment reflected in her SIE applications. *Id.* at 8–9.

The Secretary's analysis, however, is based on two faulty premises. First, the Secretary assumes that only formal, traditional religious training and beliefs can constitute the basis for a claim of conscientious objection. Second, the Secretary appears to believe that "true" conscientious objectors arrive miraculously at their opposition to war upon completion of their formal religious training. The first assumption, as discussed above, is inconsistent with the law concerning what constitutes religious training and belief for purposes of conscientious objection. The second assumption flies in the face of the psychological process by which beliefs crystallize into a commitment to oppose war in any form. *See, Goodwin v. Laird,* 317 F.Supp. 863, 865–66 (N.D.Cal. 1970).

> As the *Goodwin* court stated,
>
> "[c]rystallization" reflects a very subtle psychological process. For some persons just reading and discussing is enough to cause them to make the mental and emotional commitment to oppose participation in war. Other persons, like petitioner, need to go through . . . actual experience[s] . . . before their beliefs crystallize into commitment.

*Id.* at 866. Dr. Koh's application for discharge as a conscientious objector attests that the process for her was a long and intricate one. The evolution of her opposition to war, while rooted in her Catholic and Taoist childhood, was strongly influenced by and reflected in moral and political experiences that are part of Dr. Koh's emotional development.[3] Dr. Koh's SIE applications in fact appear to be an integral part of this evolution. In her first SIE application, Dr. Koh indicated among other things her feeling that she would not be happy in military medicine. Nine months later, in her second SIE application, petitioner referred, *inter alia,* to her opposition to the military complex and her desire not to support the military-war system in any way. One and a half years after Dr. Koh filed her second SIE request, she submitted her application for discharge as a conscientious objector, an application in which she explains the psychological process by which she came to understand the sources and implications for her of the dissatisfactions expressed in the SIE's.

The Secretary's analysis precludes the possibility that Dr. Koh's opposition to war crystallized over a period of time. For the Secretary, the failure of Dr. Koh to understand the true fact and nature of her opposition to war when she applied for SIE means that she can never be a conscientious objector. This analysis ignores both the contents of Dr. Koh's application for discharge as a conscientious objector and the imprecise psychological process by which opposition to war may crystallize in an applicant's mind. This is not a case in which the applicant's objections to military service suddenly emerged upon denial of a deferment sought on entirely unrelated grounds. *Cf. Salamy v. United States,* 379 F.2d 838, 842 n. 5 (10th Cir.1967) ("Sudden accessions of belief may be utterly sincere, as the memorable one on the Damascus Road, but they seldom synchronize so perfectly with external facts making them convenient."). Rather, Dr. Koh has fully documented the process by which she arrived at her opposition to war in any form, *see Tressan v. Laird,* 454 F.2d 761, 762–63 (9th Cir.1972) (*per curiam*), and the SIE applications are entirely consistent with her later claim of conscientious objection. The fact that Dr. Koh's private road to Damascus was lengthy and tortuous does not give rise to an inference that she never traveled it.

Recognition of the imprecise psychological process at work here precludes this Court from interpreting Dr. Koh's crystallization process so as to deny relief if her

---

**3.** The presence of political considerations, of course, does not preclude Dr. Koh's opposition to war from being based on religious training and belief. *Welsh v. United States, supra,* 398 U.S. at 342–43, 90 S.Ct. at 1797.

opposition to war is sincere. *See Goodwin v. Laird, supra,* 317 F.Supp. at 866. In addition to challenging the source of Dr. Koh's opposition to war, the Legal Review relied upon by the Secretary in denying her application also cites several reasons for concluding that Dr. Koh's beliefs are not sincerely held. The "basis in fact" test is easier to state than to apply in the subjective area of the applicant's sincerity. *Smith v. Laird,* 486 F.2d 307, 310 (10th Cir.1973). Nonetheless, careful review of the record leads us to the conclusion that none of the three facts relied upon by the Secretary constitutes a legally sufficient basis in fact for finding that Dr. Koh is insincere in her beliefs and therefore denying her application.

■ The first fact relied upon by the Secretary as indicative of insincerity is the timing of Dr. Koh's application for discharge as a conscientious objector. A.R. 9. Recognizing that the timing of such an application is not, in and of itself, a sufficient basis for concluding that the applicant is insincere, *see Thompson v. United States,* 474 F.2d 323, 327 (9th Cir.1973), the Secretary points to the timing in the context of Dr. Koh's SIE applications and receipt of active duty orders. A.R. 9. We perceive, as apparently the respondent does, that the SIE applications filed by Dr. Koh are the linchpin of the Secretary's decision. But, as discussed above, the SIE applications do not in any way support a conclusion that Dr. Koh is insincere in her opposition to war. If anything, viewed in the context of the crystallization of Dr. Koh's beliefs, the SIE applications support the opposite inference.

The receipt by Dr. Koh of active duty orders prior to the filing of her application for discharge also does not give rise to an inference of insincerity. The record reveals that, though filed with the Air Force after the receipt of her active duty orders, the application for discharge as a conscientious objector was being developed by Dr. Koh for several months prior to issuance of those orders. Dr. Koh's arrival at her opposition to war was not instantaneous upon receipt of her orders to report to active duty. In light of the record of the crystallization of Dr. Koh's beliefs, we would ignore the law of this Circuit if we were to hold that applying for classification after receipt of active duty orders is a sufficient basis for a finding of insincerity. *Tressan v. Laird, supra,* 454 F.2d at 762–63.[4]

■ The second fact relied on by the Secretary as supporting an inference of the insincerity of Dr. Koh's conscientious objector claim is Dr. Koh's statement during her medical evaluation for active duty that she has a "homosexual lifestyle." A.R. 9. As the Secretary points out, however, homosexuality is not in itself inconsistent with conscientious objection. *Id. See Rastin v. Laird,* 445 F.2d 645, 648 (9th Cir.1971). The discussion in the Legal Review of Dr. Koh's motives for making this statement when she made it amount to no more than suspicion and speculation on the part of the Secretary. An opinion so based does not satisfy the "basis in fact" test. *Ward v. Volpe, supra,* 484 F.2d at 1234 n. 3. The truth of Dr. Koh's statement is not challenged in the Administrative Record. Since the fact of Dr. Koh's sexual preference is not inconsistent with her claim of conscientious objection, it cannot provide a "basis in fact" for denying her application for discharge. *Rastin v. Laird, supra,* 445 F.2d at 648.

---

**4.** It is appropriate to note at this point the argument made by respondent's counsel at the hearing on Dr. Koh's petition that the timing of Dr. Koh's application for a deferment to pursue graduate medical education, after her conscientious objector beliefs had crystallized, is a "basis in fact" for denying her application for discharge. The pursuit of such a deferment is by no means inconsistent with Dr. Koh's claim of conscientious objection. It is unreasonable to expect Dr. Koh to forego options that might permit her to complete her medical education before reporting for active duty when the possibility exists that the Secretary will, as he did here, deny an application for discharge as a conscientious objector. *See United States v. Newton,* 435 F.2d 671, 674–75 (9th Cir.1970) (contrasting *Witmer v. United States,* 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); *see also United States v. McGuire,* 480 F.2d 1084, 1088 (1st Cir.1973).

 Lastly, the Secretary relies on the perceptions of military officials who interviewed Dr. Koh in connection with her application for discharge as a basis for concluding that Dr. Koh's beliefs are not sincerely held. At page 10 of the Administrative record, the Secretary states that

> [t]he investigating officer and chaplain found her vague in her answers, and unable or unwilling to articulate them with the style and clarity of her written statements. This conclusion supports a finding that her application for conscientious objector status was driven primarily by considerations of a non-religious, political character.

This statement by the Secretary raises some doubts as to whether the Secretary and those on whose analysis he relied read the record. The statement itself is made as part of the discussion of the bases in fact for concluding that Dr. Koh is insincere. Yet the last sentence indicates that the Secretary relied on the perceptions of the interviewing officers to support a determination that Dr. Koh's beliefs were motivated by non-religious, political considerations. More significantly, the record reveals that the investigating officer, whose report appears at pages 111 through 114 of the Administrative Record, made no observations whatsoever as to the vagueness of Dr. Koh's answers or the relative clarity of her written and spoken statements. The chaplain who interviewed Dr. Koh did make the observations referred to in the Legal Review, but he concluded that Dr. Koh's beliefs were sincerely held. A.R. at 118. The record thus belies the facts asserted by the Secretary as a basis for concluding that Dr. Koh is insincere.

## IV. CONCLUSION

Dr. Koh presented to the Secretary a prima facie case for classification as a conscientious objector. None of the matters pointed to by the Secretary constitutes a legally sufficient "basis in fact" for denying Dr. Koh's application. Accordingly,

IT IS HEREBY ORDERED that the petition for writ of habeas corpus is granted and that the Secretary of the Air Force take immediate steps to discharge Dr. Koh from his custody and control.